SOLON HUMPHREYS *et al.*

*v.*

JOHN NELSON, Collector.

*Filed at Ottawa November 14, 1885.*

1. TAXATION—*valuation of personal property—by whom.* Under the Revenue act of 1872, and the amendments thereto, the owner of personal property, or his agent, or person required to list the same, is not required to fix its valuation. The assessor, not the owner or agent, must fix its valuation, so that the same may be uniform, as nearly as practicable. If the person listing property places a valuation on it, the assessor is under no obligation to be governed in any respect by it.

2. SAME—*former decisions.* In *Cleghorn* v. *Postlewaite et al.* 43 Ill. 430, in giving a construction to certain sections of the revenue laws of 1845, 1849 and 1853, in which it was required that persons listing property for taxation should fix a value thereon, it was *held*, that when the assessor accepted a list of property made in accordance with those statutes, without question, he could not afterwards alter it without notice to the party assessed. The cases of *McConkey* v. *Smith*, 73 Ill. 313, *National Bank of Shawneetown* v. *Cook*, 77 id. 622, and *Wabash, St. Louis and Pacific Ry. Co.* v. *Johnson*, 108 id. 11, refer to the doctrine announced in *Cleghorn* v. *Postlewaite et al.* with approval, although they arose under the Revenue law of 1872, which has no corresponding provisions to those controlling in the latter case. Nor was the doctrine of *Cleghorn* v. *Postlewaite et al.* material to the decision of the question before the court in either of those later cases; so what is said in them in regard to the rule in *Cleghorn* v. *Postlewaite et al.* is merely *obiter dicta.*

3. SAME—*rights of owner—and remedies in case of over-valuation by assessor.* A person whose personal property is assessed has the legal right

46 HUMPHREYS *et al. v.* NELSON.

Statement of the case.    Brief for the Plaintiffs in Error.

to demand and receive of the assessor a copy of the statement of his property, showing the valuation of the same by the assessor, signed by him. Such copy should, for convenience, be requested at the time the owner furnishes a list of his property, or he may make the request at any time after while the lists are in the assessor's hands, and if the owner feels aggrieved by an excessive valuation, his remedy, in counties under the township system, is by application to the board of review for a reduction. If he fails to avail of this remedy to have his assessment corrected, a court of equity will not relieve him, and enjoin the tax based upon the excessive valuation.

WRIT OF ERROR to the Circuit Court of Sangamon county; the Hon. WILLIAM L. GROSS, Judge, presiding.

This was a bill in equity, by the receivers of the Wabash, St. Louis and Pacific Railway Company, to enjoin the collection of a tax levied on a valuation of certain personal property of that company. The material allegations are, that the company, within the proper time, returned to the county clerk a list or schedule of its personal property owned and possessed on the first day of May, 1884, valued at $8600; that the town assessor afterwards, and without any notice to the company, changed the valuation, and increased it to $50,500, a sum largely beyond the value of the property; that the assessor made no complaint to the company that its valuation was unsatisfactory, and did not offer to examine any officer of the company, under oath, as to the amount or nature of the property the company was liable to schedule. The collector demurred to the bill, and the court sustained the demurrer and dismissed the bill. The receivers prosecute this writ of error from that decree, and assign for error the sustaining of the demurrer and the dismissing of the bill.

Messrs. GREENE, BURNETT & HUMPHREY, for the plaintiffs in error:

Under the law as it stood prior to 1872, the increase in the valuation without notice to the owner, rendered the tax on the increase void, and equity would enjoin its collection. *Cleghorn* v. *Postlewaite,* 43 Ill. 428; *Bank of Shawneetown* v.

*Cook,* 77 id. 620; *McConkey* v. *Smith,* 73 id. 313; *Railroad Co.* v. *Johnson,* 108 id. 11.

This rule has not been changed by subsequent legislation, and it applies equally to corporations.

Mr. JOSEPH M. GROUT, and Mr. JAMES B. JONES, for the defendant in error:

The cases cited by plaintiffs in error are no longer authority, because the same questions can not arise under the present Revenue act. Under the present act the person listing is not required to furnish any value to the property. The assessor is required to fix that.

The bill contains no allegations of fraud or ill-will on the part of the assessor, and if there was an error of judgment this court can not now interfere. *Insurance Co.* v. *Pollak,* 75 Ill. 295; *Ottawa Glass Co.* v. *McCaleb,* 81 id. 562; *Adsit* v. *Lieb,* 76 id. 201.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

In *Cleghorn* v. *Postlewaite et al.* 43 Ill. 430, construction was given to the several sections of the statutes then in force, in respect to the making out of assessment lists and the valuation of personal property. As bearing upon the questions then considered, reference was made, in the opinion, to section 16, chapter 89, of the Revised Statutes of 1845, section 26 of the Revenue act of 1849, and to several sections of the Revenue act of 1853. The 16th section of chapter 89 of the Revised Statutes of 1845 authorized the assessor, if he deemed it necessary, to require every owner of taxable property to give in, under oath, a list of his taxable property, and required him, in the presence of such person, to enter a description of the property in his book, and value the same in figures opposite the name of the person, etc. And the 26th section of the Revenue act of 1849 provided that the assessor should, at the

time of making the entry in his book, as required by the 16th section of the Revised Statutes of 1845, give to the person so assessed, a certificate of the entry so made, of the value of the real and personal property so assessed; and the assessor should not make any change or alteration in such entry, after having given such certificate, without giving to the person assessed an additional certificate showing such increased assessment. The 6th section of the act of 1853 directed that each person required to list property should make out, sign and deliver to the assessor, when required, a certified statement of all the personal property which it was his duty to list for taxation; and the 7th section gave the form of the list, in which it is required that the person listing shall fix the value of the property listed by him. The 10th section of the act provided that if the assessor believed that any property had been valued at less than its true value, he should value and charge such property at its true value, and *should notify the person listing such property, of such* increased valuation. And the court, after considering these different provisions, held that when a party liable to be taxed makes out and delivers to the assessor a list of his taxable property, which is accepted by the assessor without question, that officer has no power afterward, arbitrarily, and of his own motion, to alter it, without first giving the party assessed, notice.

*McConkey* v. *Smith,* 73 Ill. 313, *National Bank of Shawneetown* v. *Cook,* 77 id. 622, and *Wabash, St. Louis and Pacific Railway Co.* v. *Johnson,* 108 id. 11, refer to the doctrine announced in *Cleghorn* v. *Postlewaite et al.* with approval, although they arose under the Revenue law of 1872; yet, in neither of those cases, was the doctrine of *Cleghorn* v. *Postlewaite et al.* material to the decision of the question before the court, and in neither of them were the provisions of the Revenue act of 1872 examined and compared with those upon which, as we have seen, the opinion in that case was predicated. *McConkey* v. *Smith* expressly turned upon the question

whether the board of supervisors had power to revise and raise the assessment of personal property. It was held they could equalize assessments, but could not originate an assessment of their own mere motion, which, in that case, it was said had really been done. In *National Bank of Shawneetown* v. *Cook,* the assessment was upon shares of stock in a national bank. The bill averred and the demurrer admitted that the shares were listed and assessed at $40 per share, which valuation was satisfactory to the owners; that the assessor afterwards, and without notice to the stockholders, changed this valuation, and raised it to $100; that in September of that year, (the assessment not having been completed until in August,) the county board made an order reducing the assessment to $50 per share, and that afterwards, in March, 1873, the county board rescinded its former orders, and increased the valuation of the shares to $64 each. The question in *Wabash, St. Louis and Pacific Railway Co.* v. *Johnson,* was whether an assessor may add to his assessment roll subsequently discovered property. What was said, therefore, in those cases, in regard to the rule in *Cleghorn* v. *Postlewaite et al.,* was clearly *obiter dicta.*

The Revenue act of 1872 has no corresponding provisions to those controlling in *Cleghorn* v. *Postlewaite et al.* Section 24 of the act of 1872 provides that "persons required to list personal property shall make out and deliver to the assessor, at the time required, a schedule of the numbers, amounts, quantity and quality of all personal property in their possession, or under their control, required to be listed for taxation by them." The word "value" is significantly omitted. The section then proceeds: "It shall be the duty of the *assessor to determine and fix the fair cash value* of all *items* of personal property." And so the owner or agent has nothing to do with that question. To the same effect, also, is section 24 of the amendatory act of May 31, 1879. Section 40 of that act requires the railroad company, or those owning, operating or

4—115 ILL.

constructing it, to return sworn lists or schedules of the taxable property of such railroad, as in the act is afterward provided. The 47th section provides that "the county clerk shall return to the assessor of the town or district, as the case may require, a copy of the schedule or list of real estate (other than 'railroad track') and of the personal property (except 'rolling stock') pertaining to the railroad; and such real and personal property *shall be assessed by the assessor.* Such property shall be treated in all respects, in regard to assessment and equalization, the same as other similar property belonging to individuals, except that it shall be treated as property belonging to railroads, under the terms 'lands,' 'lots' and 'personal property.'" Again, in the 78th section of that act, in defining the duties of persons listing property, and of assessors, the assessor is required to call at the office, place of doing business, or residence, etc., and shall require the person to be assessed to make a correct statement of his taxable property, which statement he must swear to and deliver to the assessor; and the language of the section then following is: "*And the assessor shall thereupon assess the value of such property,* and enter the same in his books." The 83d section provides that in all cases of failure to obtain a statement of a person's property, from any cause, it shall be the duty of the assessor to ascertain the amount and value of such property, and assess the same as he believes to be the fair amount and value thereof. As amended by section 24 of the act of May 31, 1879, in such case, the assessor is required to be governed by the same rules of uniformity that he adopts as to value in assessing other personal property, and where any person refuses to make out the list, the assessor is to add an amount equal to fifty per cent of such valuation. The valuation of the owner or agent, it thus appears, is nowhere required; and it is obvious from the provisions quoted, especially when considered in connection with the duty which devolves upon the assessor to make his valua-

tions uniform, that if furnished, the assessor is under no obligation to be in any respect governed by it. The assessor, not the owner or agent, must value the property. *Felsenthal et al.* v. *Johnson,* 104 Ill. 22.

But has the owner of property no relief against excessive valuations? The statute furnishes a ready answer. If the person assessed desires, he may obtain a copy of the assessment from the assessor. The 84th section provides: "The assessor, when requested, shall deliver to the person assessed a copy of the statement of property, in the act before required, showing the valuation of the assessor of the property so listed, which copy shall be signed by the assessor." This request should, for convenience, be made at the time of furnishing the list of his property by the tax-payer, but might be made at any time while the lists are in the hands of the assessor. Then section 86, as amended by the acts of May 29, 1879, and June 2, 1881, requires, in counties under township organization, that the assessor, clerk and supervisor of the town shall meet on the fourth Monday of June, for the purpose of reviewing the assessments of property in such town. And on the application of any person considering himself aggrieved, they shall review the assessment and correct the same, as shall appear to them just. Every tax-payer must take notice of this opportunity to have his assessment corrected, at his peril. (*Porter* v. *Rockford, Rock Island and St. Louis Railroad Co.* 76 Ill. 598.) But the statute also requires that notice shall be given by posting notices, for at least ten days previous, in three public places of the town.

There is no pretence in the averments of the bill, that the railway company asked for a copy of the statement of its assessment, as provided by section 84, and that the assessor refused to deliver it, or that it appeared before the town board on the fourth Monday of June, and made complaint that its assessment was too high, and was denied a hearing by that board. Having abundant remedy at law for the correction of

the errors by which it claims to have sustained injury, and having neglected to resort to that remedy, it can not now have relief in a court of equity. *Adsit* v. *Lieb et al.* 76 Ill. 198; *People* v. *Big Muddy Iron Co.* 89 id. 116.

The demurrer to the bill was properly sustained.

*Decree affirmed.*