## LINGLE v. TOWNSHIP OF ELMWOOD.

1. TAXATION—VOLUNTARY PAYMENT.
   A tax paid before levy or threat of levy or duress of any kind is paid voluntarily.

2. SAME — PAYMENT UNDER PROTEST — PARTY ENTITLED TO MAKE PAYMENT.
   Under section 3876, 1 Comp. Laws, one who owns all the bonds of a corporation and owns and controls most of its stock, and has control and management of its property and affairs, the corporation itself having no money or credit, so as to enable it to pay taxes assessed against it, is entitled to pay such taxes under protest and to recover back the amount paid if the tax is illegal.

3. SAME—RECOVERY—ACTION—TIME OF SUIT.
   Under section 3876, 1 Comp. Laws, an action to recover back illegal taxes paid under protest must be brought within 30 days after payment.

4. SAME—TIME OF PAYMENT—EVIDENCE.
   Under section 3876, 1 Comp. Laws, authorizing payment of illegal taxes under protest, and requiring suit to recover back the money paid to be brought within thirty days after payment, neither the tax receipt nor any entry made by the treasurer is conclusive on the taxpayer as to the date of payment, and he may prove the time of payment and protest independently, without first showing that no record has been kept by the treasurer or that such record cannot be produced.

5. SAME—ILLEGALITY OF TAX—FRAUD.
   Protests filed on the payment of a tax, charging willful overvaluation, favoritism, and omission of property from the roll by the supervisor, and refusal by the board of review to relieve the taxpayer, sufficiently indicate fraud to raise an issue as to the legality of the tax. Sections 3899, 3939, 1 Comp. Laws.

Error to Leelanau; Mayne, J. Submitted November 8, 1905. (Docket No. 99.) Decided December 4, 1905.

Assumpsit by Samuel B. Lingle against the township

of Elmwood for taxes paid under protest. There was judgment for defendant on a verdict directed by the court, and plaintiff brings error. Reversed.

*Dwight D. Root*, for appellant.

*Patchin & Crotser* (*A. F. Bunting*, of counsel), for appellee.

HOOKER, J. The Traverse Beach Association, owns resort property upon Traverse Bay. It was the claim of the plaintiff that he was owner of all of the bonds of said company, and that he owned and controlled most of its stock, and had control and management of the property belonging to the association and its affairs. He caused this action to be brought against the township in which said property is situate to recover an amount paid by him under protest, claimed by the defendant to be due for taxes assessed upon said property. To maintain his case he offered testimony tending to show that he paid the taxes through his attorney, and that they were paid under a written protest, delivered to the treasurer at the time, which writing states, as grounds for the protest.

1. That the property was fraudulently and corruptly assessed at more than its actual value, and more than its relative value to other property assessed upon the same roll.

2. Because the supervisor *willfully* and *intentionally* omitted from the roll large quantities of personal property which it was his duty to assess.

3. Because the board of review willfully, fraudulently, and dishonestly neglected, and refused, to cause said omitted property to be added to the roll.

4. Because said board fraudulently, willfully, and intentionally refused to raise the assessment of other real estate, or reduce that of the Traverse Beach Association, although requested to do so.

5. That the board of review of said township did not hold a legal meeting on the last day fixed by law for reviewing the assessment roll.

6. Because said board illegally held a meeting after the time fixed by law, and assumed to change and fix the

amounts of the assessed valuation of property contained in the roll.

Other grounds were stated, but they only repeat the foregoing.

Upon the trial plaintiff testified that after the assessment was made he appeared before the board of review and objected to the assessment, and he offered in evidence a protest which he filed with said board at that time. In that protest he complained of overassessment, giving reasons therefor, also that the property was assessed higher relatively than other property, citing instances of low assessment of property, including that of relatives of the supervisor, and that much personal property was omitted from the roll, and asking either a reduction of this property, or the raising of other parcels, and that omitted personal property be added, and offered proof, if the board would fix a time for the hearing of the matter. Plaintiff also testified that he paid these taxes under protest; that the Traverse Beach Association had no money nor credit, and could not procure money to pay the taxes assessed; that he owned all the bonds but one, and "practically controlled the whole thing by controlling almost all of the stock," and paid the tax himself; that he was "practically the association." The testimony tended to show, further, that the protest was filed with the board of review on the last day provided by law for the purpose, by counsel employed by the plaintiff, and that the tax was paid by counsel with money furnished by the plaintiff, and such payment was accompanied by the aforesaid written protest served upon the treasurer. Witness Pratt testified that the tax was paid by check, but that he did not know the date, but, as he understood it, this suit was commenced within 30 days afterwards.

The following dialogue ensued:

"*Q.* Can you state how long before the commencement of this suit that check was given?

"*A.* I can as I then understood it.

"*Q.* How long was it?

" *Mr. Patchin:* I object to that.   The record evidence is the best evidence.   Further, in order to fix the time of the payment, the check itself would be the best evidence.

"*The Court:* The statement contains the element of indefiniteness, ' As I then understood it,' that taken in connection with the other objections, the objection will be sustained unless it is shown that there is no record of it, that the check is lost or some other fact.

" *Mr. Pratt:* Note an exception.

" *Q.* Had you any knowledge of the fact of payment at the time payment was made ?

"*A.* I did have.

" *Q.* Did you also have knowledge of the fact as to when the suit was commenced ?

"*A.* I did.

" *Q.* How long before the commencement of suit was the tax here in question paid ?

" *Mr. Patchin:* I object.   The records are the best evidence of that.

" *The Court:* Till the proper showing is made, the objection is sustained.

" *Mr. Pratt:* Note an exception.   I wish to state here that I will have the check itself here this evening.   Mr. Davis has been notified and he will be here with it.

" *The Court:* The tax receipts are here ?

" *Mr Pratt:* Yes, sir; but they are not correct as to date, I know as a matter of fact that they were dated a long time before payment.

" *Mr. Patchin:* I object to that.

" *The Court:* The protest would not be incorrectly dated ?

" *Mr. Pratt:* It was dated—not filed—but dated, but we did not make nor file the protest, nor Mr. Foote deliver the receipts until nearly a month after they bear date.

" *Mr. Patchin:* I move that that statement be stricken out.

" *The Court:* Was that a matter of testimony on your part ?

" *Mr. Pratt:* Yes, sir.

" *The Court:* Well, till the records are shown or inability to show them, it will be stricken from the record. Note an exception.

" *Mr. Pratt:* What do you mean by a ' record ? '

" *The Court:* The township treasurer should have made a record of the date.

" *Mr. Pratt:* Does the court hold that he could have

made a record that would bind us different from the fact ?

" *The Court:* The court has made a ruling that, when the other evidence is presented, I will pass upon them. If after that is presented you desire to be heard in relation to it, that will be all right; that will be another thing.

" *Mr. Pratt:* I simply say this: That as to the question of when the time of payment was made I want the opportunity to get Mr. Davis here and offer to prove the facts, and in the meantime I am ready to proceed with the proof on the other questions. The record in the township treasurer's hands contains the mark ' paid under protest January 8, 1902,' and I offer to prove now that that record is incorrect and that the payment was made in fact on the 1st day of February, 1902, paid by our check and accepted by Mr. Foote on or after that date.

" *The Court:* That is your offer. Proceed. Have you the receipts here ?

" *Mr. Pratt:* Yes, sir; and they are dated January 8, 1902. I say, however, that neither by giving a receipt nor by making a record on his tax roll different from the fact could he bind us.

" *The Court:* Proceed with plaintiff's testimony.

" Witness Pratt continued: My partner went to the treasurer's office on January 8, 1902, to pay the taxes, but returned without paying them and presume that accounts for the dates on receipts."

It was shown, also, that plaintiff owned a large amount of stock in the Traverse Beach Association, and was in the habit of acting as its president. Before the close of plaintiff's testimony, on motion of defendant's counsel, the court directed a verdict for the defendant, which was duly entered, together with judgment thereon and the plaintiff has appealed.

Was the payment of the tax a voluntary one ? There seems nothing to indicate the contrary. It was paid before levy or threat of levy, or duress of any kind, and therefore cannot be said to be involuntary. The statute (1 Comp. Laws, § 3876) permits any person to pay a tax without waiting for a levy, and allows him to accompany said payment by a written protest at the time of payment, and to recover back the amount paid, upon the ground of illegality that may be stated in the protest. In saying

that this was a voluntary payment, we understand defendant to mean that the protest failed to state a sufficient ground, or, if stated, that plaintiff failed to prove such, and that *therefore* it must be treated as a voluntary payment. If the protest contains a sufficient allegation, and the evidence supports it, the question of plaintiff's right to recover for a fraudulent amount should have gone to the jury (if the court might not have directed a verdict upon it as conclusively shown), unless there is some other reason which should preclude a recovery by plaintiff. Two such are stated: (*a*) That the plaintiff had not a right to recover in his own name. (*b*) The suit was not seasonably brought. As to the first of these, the statute seems a sufficient answer. If the plaintiff's testimony is true, he paid this tax for his own protection, very much as a mortgagee might do. The statute permits this, and contains nothing to indicate that such a payment by an interested party may not be made under protest, and recovered back.

The second ground, if the claim be true, is an answer to plaintiff's suit, for the statute clearly requires the action to be brought within 30 days after payment. It does not appear from the record that the action was brought within the statutory period. This would have justified the direction of a verdict for defendant, but for plaintiff's offer to show that the tax was paid, and the protest given to the treasurer at a different time from the date of the tax receipts. The judge was of the opinion that records required to be kept by the treasurer would be conclusive of the question of date, and that until it should be shown that there was no record, or that it could not be produced, secondary evidence could not be received. See 1 Comp. Laws, § 3876. We cannot assent to this view. It was competent and necessary for plaintiff to prove the time of payment and protest, and he could not be concluded by the date of the tax receipt, or any entry that the treasurer might make. It follows that this cause must be reversed, unless the plaintiff has utterly failed to prove his grounds of protest to have been well taken.

It is urged that the protests contain no sufficient ground for holding the tax illegal. Section 76 of the tax law (1 Comp. Laws, § 3899) provides that—

"In any suit or proceeding to enforce or set aside a tax, such tax shall be held illegal only for one of the following reasons:  *  *  *

"*Fifth*, That the supervisor or board of review in assessing a person or property for taxation, or in the apportionment of the tax to the person or property in question acted fraudulently.

"If any such illegality, omission, or fraud affects the amount of one tax only, the tax shall be sustained so far as the same is legal and just."

Section 116 (1 Comp. Laws, § 3939) makes it a misdemeanor for any assessing or other officer to willfully assess any property at more or less than what he believes to be its true cash value. It has been held that taxes may be set aside as illegal, where property has been fraudulently overassessed, whether it be by overvaluation of such property or by willful overassessment. See *Auditor General* v. *Iron Co.*, 123 Mich. 521; *Auditor General* v. *Hughitt*, 132 Mich. 311; *Auditor General* v. *Improvement Co.*, 129 Mich. 182 (56 L. R. A. 105).

In the present case counsel say that neither the protests nor the proofs indicate fraud. We think otherwise. The protests charge willful overvaluation, favoritism, and omission of property from the roll by the supervisor, and refusal by the board of review to relieve the plaintiff against them. There is an offer of proof from which such fraudulent conduct might be inferred, and the question might therefore have been one which should have been submitted to the jury, had plaintiff been allowed to put in his testimony. The following excerpt from the record shows that the case was disposed of on motion of defendant's counsel upon what was called a jurisdictional ground, cutting off plaintiff's opportunity to introduce further testimony:

" *Q.* State whether or not you are acquainted with the

values of real estate in Elmwood township, and what part of it?

" *The Court:* It is desirable that I should pass upon the jurisdictional points raised by defendant before we take up the question of value.

" *Mr. Patchin:* I move the court to now direct a verdict for defendant, for the reasons that the evidence shows that plaintiff paid the taxes in question voluntarily, and that he did not pay them involuntarily. Also, that plaintiff has no legal right to recover back the tax in his individual name, and also because plaintiff did not begin the suit within 30 days after the paying of the tax.

" And thereupon the court instructed the jury to return a verdict in favor of defendant of 'No cause of action,' and it was done. To which instruction the plaintiff duly excepted. And thereupon judgment was rendered against the plaintiff and in favor of the defendant upon said verdict for costs of suit. To which judgment plaintiff duly excepted."

The judgment is reversed, and a new trial ordered.

MOORE, C. J., and MCALVAY, MONTGOMERY, and OSTRANDER, JJ., concurred.