FLETCHER PAPER CO. *v.* CITY OF ALPENA.

1. TAXATION—ILLEGALITY—INSUFFICIENT VALUATION — FRAUD OF BOARD OF REVIEW.

In an action to recover back taxes paid under protest on account of the illegal action of a board of review in arbitrarily reducing the valuation of property owned by a corporation from $800,000 to $10,000, the action of the circuit judge in valuing the assessed property at $200,000 more than the assessment is not prejudicial to plaintiff.

2. SAME—MUNICIPAL CORPORATIONS—POWER OF COMMON COUNCIL.

A resolution of the common council of a city directing the board of review to make such reduction is illegal and of no effect.

3. SAME—ILLEGAL REDUCTION BY BOARD OF REVIEW.
   The unlawful action of the board of review does not invalidate
   the entire assessment, but entitles the plaintiff to recover the
   excess over the just tax.

Error to Alpena; Emerick, J.   Submitted February 28,
1910.   ( Docket No. 15.)   Decided March 19; 1910.

Assumpsit by the Fletcher Paper Company against the
city of Alpena for taxes paid under protest.   A judgment
for plaintiff for less than the amount claimed, on a verdict
directed by the court, is reviewed by plaintiff on writ of
error.   Affirmed.

*Charles R. Henry,* for appellant.

*Joseph Cavanagh (Frank D. Scott,* of counsel), for
appellee.

STONE, J.   This is an action of assumpsit brought
against the city of Alpena in the circuit court of that
county, in which action the plaintiff seeks to recover the
sum of $5,758.50 and interest, being the amount of taxes
and charges paid for the year 1908 by it on its property in
said city, said taxes having been paid involuntarily and
under protest, and the present suit having been brought
under the provisions of section 3876, 1 Comp. Laws, as
amended by Act No. 130, Pub. Acts 1901.   The property
of the plaintiff was assessed at the sum of $300,000.   It
appears that on April 13, 1908, that being the date when,
by the tax law of the State, values of property were de-
termined for taxation, the Huron Portland Cement Com-
pany, a corporation, had a large amount of property with-
in the city of Alpena subject to taxation.   This property
consisted of buildings, machinery, docks, wharves, and
other things incident to the manufacture of Portland
cement.   The comptroller of the city for said year as-
sessed the real estate of the said Huron Portland Cement
Company at $800,000, and its personal property at $5,000.
When the board of review of the city met for the purpose

of reviewing and determining assessments against property for that year, it reduced the valuation of the real estate of said Huron Portland Cement Company from $800,000 to $10,000. The only record made by the board of review at the time of making this reduction was as follows:

"Moved by McCain, supported by Spens, that the assessment of the Huron Portland Cement Company be placed at $10,000 as agreed by common council of the city of Alpena, the plant still being in the course of construction. Carried. The comptroller and city attorney not voting."

The action of the common council, above referred to, does not fully appear in the record, but plaintiff's attorney has, we think, correctly set it forth in his brief. After the statement of the members present, the resolution upon this subject is as follows:

"Resolution by Alderman Mawhinney, supported by Alderman McPhee—Whereas, the citizens of the city of Alpena, at a mass meeting held at the Maccabee Temple in the city of Alpena, on Friday, August 17, 1906, passed a resolution recommending the common council of the city of Alpena to make arrangements with H. J. Paxton to assess the property of the company he was to organize at the same amount as the land purchased by his company for a site is now assessed, for a period of two years, and thereafter assess the same at the sum of $50,000 for a period of eight additional years, and, said H. J. Paxton, acting upon said resolution, has purchased what is known as the Avery Mill site and other property, and has organized what is known as the Huron Cement Company, and is proceeding to carry out said arrangements upon his part. Now, therefore, be it resolved, that the comptroller of the city of Alpena and the board of review are herein and hereby instructed to assess said property of said Huron Cement Company at the same amount as said property is now assessed ($10,000) for the years 1907 and 1908, and at the sum of $50,000 for the years 1909 to 1916, inclusive."

This resolution was adopted with but one dissenting vote. It will be seen that by this action of the board of review the valuation of the real estate of the Huron Cement Company was reduced from $800,000 to $10,000,

which appears to have been merely a nominal valuation, and it seems to have been conceded upon the trial of this case that the property was not, by the board of review, assessed at its true cash value; and this within the knowledge of the members of the board of review. When the roll was placed in the hands of the treasurer for collection the plaintiff refused to pay its taxes because of the said action of the board of review. Whereupon the treasurer made seizure under the warrant attached to his roll, and the plaintiff paid, after seizure and under protest, the amount of its taxes, and within the time prescribed by the statute brought this action to recover back what it had so paid. Upon the trial the evidence tended to show the value of the real estate of the Huron Cement Company to be from $500,000 to $1,250,000. The circuit judge determined that the value of the property, real and personal, of the Huron Cement Company, was $1,005,000, and calculated on that basis the loss which the plaintiff had sustained, and directed a verdict for the plaintiff, and against the defendant, including interest and expenses, of $987.15.

It appears that the comptroller, whose duty it was to make the assessment, fixed the value of the real estate of the Huron Cement Company at $800,000. Manifestly the action of the board of review was unlawful and void. The circuit judge might have well adopted the valuation as fixed by the comptroller, at $800,000. By increasing the valuation to $1,000,000 the plaintiff was benefited; for the larger the amount of the omitted property was found to be, the less tax the plaintiff would have to pay. The plaintiff does not allege error because the circuit judge fixed the valuation of the omitted property at $1,000,000 instead of $800,000 but alleges error because the circuit judge did not direct a verdict for the plaintiff for the full sum of taxes and charges paid by it, instead of the sum of $987.15. The whole amount of taxes to be raised was $116,748.72. By this action of the circuit judge the aggregate valuation upon the roll was changed from $6,145,-

160 MICH.—30.

183 to $7,135,183. This took into consideration the valuation on the roll of the personal property at $5,000, and of the real estate at $10,000. It is very clear to us that the resolution of the common council was of no force or effect, and the action of the board of review was equally as palpably wrong and illegal as though the council had not passed their ineffective and unauthorized resolution. The single question presented in this record by the assignment of error is, Can the taxpayer, under the circumstances here stated, sue and recover back all of the taxes paid, or can the court adopt the action of the assessor and adjust the defendant's liability accordingly ?

If we are correct in treating the action of the board of review as wholly void and without authority, this would leave the assessment made by the comptroller to stand at $800,000; and, if the court has benefited the position of the plaintiff by adding $200,000 more as the value of the omitted property, the plaintiff cannot complain of the result. The attorney for the defendant contends, and we think justly, that a reading of the record at pages 35 to 37, inclusive, clearly shows that upon the trial the plaintiff's attorney acquiesced in the sum of $1,000,000, as fixed and adopted by the circuit judge.

Plaintiff's counsel cites the following decisions of this court in support of his position: *Merrill* v. *Humphrey*, 24 Mich. 172; *Walsh* v. *King*, 74 Mich. 350 (41 N. W. 1080); *Solomon* v. *Township of Oscoda*, 77 Mich. 365 (43 N. W. 990); *Weston* v. *Monroe*, 84 Mich. 341 (47 N. W. 446); *Auditor General* v. *Prescott*, 94 Mich. 190 (53 N. W. 1058); *Auditor General* v. *Pioneer Iron Co.*, 123 Mich. 521 (82 N. W. 260); *Auditor General* v. *Improvement Co.*, 129 Mich. 188 (88 N. W. 468, 56 L. R. A. 105); *Auditor General* v. *Hughitt*, 132 Mich. 311 (93 N. W. 621); *Bialy* v. *Bay City*, 139 Mich. 495 (102 N. W. 1033); *Delray Land Co.* v. *Township of Springwells*, 149 Mich. 397 (112 N. W. 1132); *Williams* v. *Merritt*, 152 Mich. 621 (116 N. W. 386).

The appellee contends that the doctrine of this court, as

announced in *Auditor General* v. *Jenkinson*, 90 Mich. 523 (51 N. W. 643), and kindred cases, applies, and that the action of the circuit court was correct. It will be well for us to examine the cases cited.

In the case of *Merrill* v. *Humphrey*, *supra*, a bill was filed against a property owner to enjoin the collection of taxes on the ground that the amount was excessive; and it was held that the complainant should show by his bill, as near as might be, practicably, what amount was just, and that he should offer to pay to the proper officer the amount which he concedes to be properly chargeable against him. The opinion in that case was by Justice COOLEY. He said:

"Accepting to the fullest extent, as we must upon demurrer, the truth of the matters alleged in the bill, there is no equity in relieving the complainant altogether from the payment of taxes upon his lands. He owes to the state, county, and township the same duty, and is under the same obligation with every other property owner therein; and the attempt by an official to exact from him more than is just, will not excuse him from bearing the burden so far as it is just."

The case of *Walsh* v. *King*, *supra*, was a bill in equity to cancel taxes and to enjoin their collection. The case was before this court on demurrer to the bill. The bill alleged that $400,000 of taxable property was practically exempted from taxation in violation of law, and by an agreement of the assessing officers with vessel owners in the city of Port Huron. This was held to be a fraud upon the complainant, and that where the assessing officers by an agreement with the owners of a certain class of property assess the same at less than its cash value, a taxpayer whose taxes are increased is entitled to relief in equity, and to such a reduction of his taxes as will make his burden of taxation no greater than if said property had been assessed at its fair cash value; and this was so held; that is, that reduction of the tax could only be had to the extent that the complainant had been injured, even

though there was a wilful, intentional violation of the law by the officers.

*Solomon* v. *Township of Oscoda, supra,* was, like this case, an action of assumpsit, brought to recover certain moneys which the plaintiff had paid as taxes, under protest on the ground that they were illegally assessed. It appeared in that case that the supervisor and other members of the board of review had agreed between themselves that salt, lumber, and logs should not be listed for taxation, or assessed in the township, and there was omitted from the roll such property amounting to at least $800,000. It was held that this condition of things would entitle a taxpayer to relief from the excessive amount of his tax. In that case the evidence furnished no basis for an apportionment of the tax, and it was held that where the illegalities in a tax assessment are such that it is impossible to ferret out the legal from the illegal taxes which the taxpayer should pay, the general rule requiring him to show the excessive taxes over those which he would have been obliged to pay had he been legally and properly assessed does not apply. This case clearly indicates that if the basis is furnished, the tax will be apportioned, and the plaintiff will recover only the illegal portion paid.

*Weston* v. *Monroe, supra,* was an action of ejectment, and the tax title relied upon by the plaintiff was set aside because, after the supervisor had completed and certified to his roll, had submitted it to the board of supervisors, and had received it back from the board, with the certificate of the chairman affixed thereto, the supervisor, without any authority from the board, made several substantial alterations in the roll by adding a number of parcels of property thereto, and increasing the assessment of one parcel from $80 to $800. The additions thus made amounted to about $3,500. This case was decided upon the authority of *Ferton* v. *Feller,* 33 Mich. 199, which we shall later refer to; and it was held that the roll thus changed was not the tax roll authorized by law; that its identity had been destroyed, and that it was against

public policy to permit any tampering with the roll after it had been completed and certified to, notwithstanding the intention be good, and the taxpayer not injured.

*Auditor General* v. *Prescott, supra.* This was a petition by the auditor general for the sale of lands delinquent for taxes. The evidence showed in that case that there was purposely omitted from the tax roll of the township of Oscoda about $800,000 worth of personal property which was taxable in that township, and also that the real estate was assessed at one-fourth of its cash value. Justice Montgomery, speaking for the court, said:

"There was a very plain, clear, and wilful violation of the law by the assessing officers, and in a manner affecting prejudicially the interests of the defendants; and there is no sufficient *data* upon which the equitable amount due from the defendants for taxes can be ascertained. The questions involved have been fully considered and decided in the cases of *Walsh* v. *King,* 74 Mich. 350 (41 N. W. 1080); *Auditor General* v. *Jenkinson,* 90 Mich. 523 (51 N. W. 643); and *Solomon* v. *Township of Oscoda,* 77 Mich. 365 (43 N. W. 990)."

In *Auditor General* v. *Pioneer Iron Co., supra,* the question arose under the petition of the auditor general for the sale of land delinquent for taxes. It was there held that where, on the hearing of objections to the petition of the auditor general, it appeared that the assessor and board of review of the city intentionally omitted a large amount of personal property and real estate from the assessment roll, and greatly undervalued certain personal property, and the business and residence property of the city, in order to throw a heavier burden of taxation on the outlying lands owned by the objectors, the entire roll was properly held void as to the latter; it not being incumbent upon the objectors in such a case to furnish the court with *data* from which to determine the amount they should equitably pay which would practically involve the making of a new roll. The court said:

"Even where there was a fraudulent assessment the

court could grant relief by a reduction of the excess of tax; but in each case cited where that was done, the court had some basis by which the proper reduction could be made. In the present case none is found, and it is apparent that none can be found without making new rolls."

*Auditor General* v. *Improvement Co.*, *supra*. This case arose upon the petition of the auditor general for the sale of lands delinquent for taxes. Objections were filed by the Sage Land & Improvement Co. It was held that the action of the auditor general in deeding to the State, as tax homestead lands, a large quantity of land in a certain township, under 1 Comp. Laws, § 3949, and the subsequent omission of such lands from taxation, as belonging to the State, if unauthorized, did not invalidate the taxes assessed against the remaining lands in the township, though improperly increasing the tax imposed upon them; the action of the authorities having been taken in good faith, and under a misconstruction of the tax law.

In *Auditor General* v. *Hughitt*, *supra*, the question arose also upon the petition of the auditor general for the sale of land. It appeared in that case that after the assessment roll had been made, reviewed and completed, the supervisor corruptly and fraudulently changed and altered the valuation of certain lands by reducing the valuation fixed by the board of review, in the sum of $34,-000. The assessment for the taxes for the said year was made on such fraudulent valuation. In this case Justice GRANT said:

"Every taxpayer in the township is prejudiced, except the one whose valuation was reduced. The tax roll is a forgery. It is not the roll made by the supervisor, reviewed by the board of review, and placed in the hands of the treasurer for collection. As we said in *Weston* v. *Monroe*, 84 Mich. 341 (47 N. W. 446): 'Its legal identity is destroyed. It is not the roll authorized by law.' A forged assessment roll possesses no more validity than does a forged note. Such tax rolls have been held void even where the changes were made in good faith, and where the parties had not been injured."

In *Bialy* v. *Bay City, supra,* assumpsit was brought against Bay City to recover taxes paid under protest. It was there held that after tax rolls have been passed on by local boards of review, and are properly certified by the members thereof, no change can be made by the board or any assessing officer. Personal assessment had been made against the plaintiff of $35,000, as fixed by the board of review, which amount was increased by the State tax commissioners to $70,000. The taxes against the plaintiff were computed and carried out upon the basis of the valuations and amounts of assessment as so increased by the State tax commissioners. This court said:

"These taxes are invalid only as to the amount of the excess of the real and personal taxes, by reason of the increase in the assessments and valuations by the State tax commissioners over the original assessments. There is no question as to the legality of the assessments on the rolls before the action of the State board. The amount of taxes wrongfully assessed against the plaintiff and his assignors is determined without difficulty. The judgment of the court below is reversed, and a judgment entered in this court in favor of the plaintiff for the amount of the increase under the assessments fixed by the board of State tax commissioners, paid by plaintiff under protest, with interest from date of payment."

This case seems to be authority in support of the action of the circuit judge in the case at bar.

*Delray Land Co.* v. *Township of Springwells, supra.* This case was held by this court to be governed by the *Bialy Case,* last above referred to. This court disposed of the case in the following closing language of the opinion:

"Upon this matter we agree with the learned circuit judge who heard the case, and hold that the tax is void as to the excess created by the action of the board of State tax commissioners over and above the original assessment."

*Williams* v. *Merritt, supra,* was an action of assumpsit brought against the town treasurer and drain commis-

sioner for taxes paid under protest. It was there held that where a drain tax paid under protest consisted of a single item, in which were improperly included the expense of constructing two sections of tile drain which should have been laid as an open drain, and a large amount for tile and a bridge, rendering it impossible to separate the legal from the illegal portion of the tax, the taxpayer could not be limited in his recovery to the portion of the tax which was illegal, but was entitled to judgment for the entire tax. The court disposed of the case in the following language:

"Under these circumstances it may be said in this case as the court said in *Solomon* v. *Township of Oscoda*, 77 Mich. 365 (43 N. W. 990): That it is impossible to ferret out the legal from the illegal taxes, and therefore the rule invoked by the defendants has no application"—citing the cases of *Auditor General* v. *Pioneer Iron Co.*, *supra*; *Auditor General* v. *Hughitt*, *supra*.

It is in point to refer to the case of *Auditor General* v. *Sparrow*, 116 Mich. 574 (74 N. W. 881). In this case it was held that a change of valuations in the township assessment roll by the board of review, upon its own motion, after the expiration of the time allowed for that purpose by section 29 of the tax law of 1893 (Act No. 206, Pub. Acts 1893, 1 Comp. Laws, § 3852), invalidated the entire tax. This court said:

"We are unable to determine what the defendant's properties are valued at in the original roll, or the aggregate valuation of such roll, which we should have to know were we to attempt to ascertain their just proportion of taxes upon their original assessment. It is contended that this is within the curative section 99, which says that 'no tax * * * shall be held invalid * * * on account of any assessment or tax roll not having been made, or proceeding had within the time required by law.' We think, however, that this was clearly prejudicial, and therefore not within the terms of the section mentioned. This rendered invalid all taxes upon the roll of the township of Wakefield."

In *Ferton* v. *Feller*, 33 Mich. 199, the township treas-

urer, after the roll had been delivered into his hands, made certain alterations in the roll by drawing his pen across the figures denoting the amount of one Feller's taxes, and setting down in lieu of them other figures varying the amount of each item under the head of "School Taxes," and reducing the gross amount a little less than $1. He made similar alterations in the cases of three other taxpayers. Under this tax roll, so altered, the treasurer demanded payment of Feller of those items so inserted as taxes he was bound to pay. Payment was refused, and the treasurer seized and sold Feller's wagon. Feller then sued in trespass in this action. Referring to the action of the treasurer in altering the roll, Justice GRAVES said:

" His act in altering the roll was not an official one. It was private and personal. It is true the gross amount of the items after the alteration, and for which the seizure was made, was less than the sum officially written down, and to which the warrant applied. But this cannot aid. What was thus inserted and sought to be collected by the levy was not a tax. It was an unauthorized entry to which the warrant in legal contemplation could not apply. Public policy is opposed to all unwarranted tampering with such matters, however well intended in the particular instance, and the courts ought not to strive for reasons to screen or excuse it."

And judgment in favor of Feller was affirmed.

It seems to us very clear that the case at bar can be easily distinguished from the cases of *Ferton* v. *Feller, supra; Auditor General* v. *Pioneer Iron Co., supra; Weston* v. *Monroe, supra; Auditor General* v. *Sparrow, supra; Auditor General* v. *Hughitt, supra.* The *Hughitt Case,* and in fact all the cases just cited, are exceptional ones. The tax roll had been tampered with, had been altered and changed in its character after a time when such action could be legally had by anybody. In other words, the rolls were forgeries. It seems to us that this cannot be said in the case we are here considering. It cannot be said in this case that the action of the board

of review was a forgery.  So far as it shows in this record, that board met at the proper time and place to consider the subject of assessments.  That board had full authority to review the action of the assessing officer.  Its action was illegal, not because it attempted any forgery, but because it arbitrarily reduced an assessment from $800,000 to $10,000 admittedly fraudulently, and acting in bad faith.  The basis is furnished in this case which enables the court to do exact justice to this plaintiff.  The plaintiff has brought an action of assumpsit, which is an equitable action, against the city of Alpena, and it ought to recover the sum in which it has been damaged, by the unlawful and fraudulent action of the board of review.

It seems to us that the doctrine announced in *Auditor General* v. *Jenkinson, supra*, should apply here.  It is true that case arose upon the petition of the auditor general for the sale of lands; but, as we have already shown, the court has applied the same rule in equity in such proceedings as it has applied in actions of assumpsit brought to recover taxes paid under protest.  In the *Jenkinson Case* it appears that the vessels owned in the city of Port Huron had been assessed at 10 per cent. of their actual cash value.  In that case Justice MONTGOMERY said:

"It is claimed by appellant that the entire tax assessed against her should be declared invalid and set aside; but we think otherwise.  There is no difficulty in ascertaining the extent to which she has been affected by this unlawful omission of assessments, and it appears that her taxes were increased in consequence of the wrongful assessment by the sum of $31.23.  We think, therefore, that she is entitled to have this sum deducted from the tax assessed against her, and that this should be the extent of her relief. *Merrill* v. *Humphrey*, 24 Mich. 170."

In the case of *Lingle* v. *Township of Elmwood*, 142 Mich. 194 (105 N. W. 604), the plaintiff sued the township to recover taxes paid under protest.  In the circuit court there was a judgment for defendant directed by the court, and the plaintiff brought error.  In reversing the case Justice HOOKER said:

"If the protest contains a sufficient allegation, and the evidence supports it, the question of plaintiff's right to recover for a fraudulent amount should have gone to the jury."

In other words, the court there recognizes that the amount which the plaintiff would be entitled to recover was the fraudulent amount.

In view of the foregoing authorities, showing the state of the decisions of this court, we are of opinion that the circuit judge did not err to the prejudice of the plaintiff in this case; and the judgment of the court below is affirmed.

Montgomery, C. J., and Ostrander, Hooker, and Blair, JJ., concurred.