## CORBY *v.* CITY OF DETROIT.

1. Taxation—Special Assessment—Apportionment.
   Where a pavement was constructed in front of plaintiff's property, and an assessment levied on all the property in the district by the front-foot rule, and it was taxed for the same amount as other property in the district, although the pavement was 60 feet wide in a part of the district and only 46 feet wide in front of complainant's land, the presumption that such method of assessment was equitable, which usually prevails, would not apply.[1]

2. Municipal Corporations — Council — Assessment—Equality —Assessment District.
   If the municipal authorities deem it expedient to build pavement of materially different widths or qualities on the same street, they should provide different assessment rolls in separate districts.

3. Same—Confirmation—Uniformity.
   Under 1 Comp. Laws, § 2786 (3 How. Stat. [2d Ed.] § 6005), providing that the assessment roll when confirmed by the village council should become final and conclusive, the action of the common council in confirming an assessment roll which violates the fundamental principles of the statute as to the uniformity or equality of the tax is not final or conclusive.

4. Same—Estoppel.
   In an action to recover back taxes paid under protest for paving, which plaintiff claimed was not of uniform width throughout the tax district, and that he should not be compelled to pay the same assessment as had been levied on property in front of which wider pavement had been built, the principle of estoppel did not preclude plaintiff from recovering a judgment for the excessive amount paid, where he had protested against the method of assessment from the beginning of the levy but did not file a bill to enjoin the improvement.

---

[1] The authorities on the question of assessments for improvements by the front-foot rule are gathered in an extensive note in 28 L. R. A. (N. S.) 1124.

5. Same—Interest—Penalty.

Interest and the statutory penalty are chargeable to a taxpayer who did not pay or tender his just proportion of a special assessment for paving purposes until after the return to the county treasurer, several years after the improvement had been made, and in an action to recover a claimed excessive proportion, the fact that for some time the adjustment of the tax between the village and city of Detroit in which the village had been partly included and the village of Grosse Pointe Park was in controversy did not excuse him from paying the same.

Error to Wayne; Mandell, J. Submitted January 20, 1914. (Docket No. 9.) Decided April 7, 1914.

Assumpsit by Thomas W. Corby against the city of Detroit and village of Grosse Pointe Park for recovery of taxes paid under protest. Judgment for defendants, and plaintiff brings error. Reversed.

*Moore & Moore,* for appellant.

*Walter Barlow (Richard I. Lawson,* of counsel), for appellee city of Detroit.

*William E. Henze,* for appellee village of Grosse Pointe Park.

Steere, J. In this action plaintiff seeks to recover the amount of certain paving taxes, previously paid under protest, which were levied upon land belonging to him, located in the then village of Fairview. The levy was made pursuant to a special assessment for paving that portion of Jefferson avenue running through said village.

Jefferson avenue is an old, important, and well-known thoroughfare of the city of Detroit, and continues easterly under the same name into contiguous territory, formerly constituting the township of Grosse Pointe, in which plaintiff's land lies fronting on both sides of said avenue. Preliminary steps were

180 Mich.—14.

taken for this paving by the township of Grosse Pointe under authority of a local act of the legislature passed in 1901, and $81,000 was raised by township bonds towards the expense of extending the pavement of Jefferson avenue from the city limits easterly to an intersection known as the Cadieaux Road; but a change of municipal control over that territory took place before the work was done. In 1903 the village of Fairview was incorporated under the general law for incorporation of villages out of Grosse Pointe township territory, and included plaintiff's property. Under the requirements of appropriate local legislation the township turned the money it had raised by bond for paving that portion of Jefferson avenue over to the village. Two years later, in 1905, following various preliminary steps taken by the village authorities, the portion of Jefferson avenue included within its boundaries was paved at an approximate cost of $220,000, provided for by money received from the township as stated, a similar amount to be raised by special assessment, and a bond issue of about $26,000 to cover cost of paving at street intersections and in front of public grounds.

Plaintiff's total frontage on both sides of the avenue is 1,574.30 feet. His premises consist of 120 acres composed of two adjoining private land claims of a combined width of 787.15 feet, across which the avenue runs. His special assessment, first levied in 1905, was $3,826.08. June 27, 1911, he paid to the county treasurer of Wayne county, to whom under a supplementary assessment the taxes had been returned as delinquent, $4,906.94, filing a written protest stating various alleged grounds of invalidity. In the meantime intervening causes had relieved him from legal necessity of immediate action.

The rapid growth of Detroit and its environments in that direction led to extension of its boundaries and changes in the organization of its suburbs. By an act

of the legislature passed in 1907, the village of Fairview was abolished; a portion of its territory being annexed to Detroit, and the remaining part incorporated as the village of Grosse Pointe Park, plaintiff's premises, except 10 acres remote from Jefferson avenue, coming within the boundaries of the latter.

Under this legislation it was required that "all the books, papers and documents belonging to said village shall be transferred and delivered to the common council of said city or to such offices of said city as they may direct." Provision was also made for an adjustment and assumption between Detroit and Grosse Pointe Park of remaining rights, duties, and liabilities of Fairview. A suit in chancery to determine the proportions between the two municipalities, the details of which need not be given, resulted in a decree providing, among other things, that the city furnish the village of Grosse Pointe Park a duplicate of the special assessment roll for said paving to collect its percentage of the amount remaining unpaid against property now within the limits of said village, which was found to comprise 36.28 per cent. of the original special assessment district. Thereupon the village authorities took proper action to collect the same, and spread a reassessment of such delinquent taxes upon the general assessment roll of said village for the year 1910. Plaintiff not having paid any of the special tax against his property, it was reassessed at the same amount as before. No interest was added, though nearly five years had intervened since the original assessment was made, and the paving done. This tax, so reassessed, was not paid to the village treasurer, and at the proper time was returned as delinquent to the county treasurer.

In authorizing this improvement, and levying an assessment to defray the cost, the village authorities of Fairview acted under the provisions on that subject found in chapter 87, 1 Comp. Laws. Section 2786

(3 How. Stat. [2d Ed.] § 6005) provides that the expense of paving may be defrayed by special assessment upon the abutting premises in proportion to the number of feet front upon the street. Subchapter 8 relates generally to improvements and assessments, and section 10 (Compiler's section 2840) declares:

"When any special assessment shall be confirmed by the council, it shall be final and conclusive."

The record shows a series of meetings, beginning on June 5, 1905, held by the village council in which the various steps provided by statute appear to have been taken. At a meeting held on July 3, 1905, a special assessment roll for this improvement, prepared by the village assessors, was presented, and a resolution adopted that the assessors meet with the council on July 20th for the purpose of reviewing said assessment roll. Notice of this meeting was given, and on July 20th the council and board of assessors met together for that purpose, and, not concluding their work on that day, adjourned said meeting till July 24th, on which date the council and board of assessors met together, heard objections, and reviewed the roll. During this meeting the council referred the roll back to the board of assessors for certain corrections which were at once made, and the roll forthwith again reported to the council, whereupon, and before adjournment, the council adopted a resolution confirming said special assessment roll, also directing the clerk to indorse thereon a certificate showing the date of said confirmation, and attach thereto a certified copy of the resolution.

While some question is raised by defendants as to plaintiff having made protest against this tax at the proper time, we think the record shows that he did in that particular protect his rights by appearing before both the board of assessors and the council and urging his objection.

It was conceded on the trial that the total length of this paving, measuring both sides of the avenue as assessed, was 19,587.1 feet or 3.7 miles, and that the same amount per front foot was assessed against the abutting property for the entire distance, regardless of the width or character of the pavement in front of any portion of the property. Of this, 12,020 feet easterly from the limits of the city of Detroit was paved 60 feet wide, the 3,040 feet next east being 48 feet wide, and the balance continuing to the east village limits, was but 46 feet wide. Plaintiff's property all fronted on the narrowest portion, farthest from the city. His assessment for a pavement 46 feet wide was the same amount per front foot as that on property nearest the city for a pavement of the same kind 60 feet wide.

If the assessment as originally made by the village of Fairview in 1905 was valid, the subsequent steps taken by its assessors to collect the unpaid portion of the tax are not open to question. Plaintiff's indicated grievance was and is, not that the improvement was made, and he was taxed for it, but that the uniform front-foot rule of assessment adopted, when applied to the varying width of the pavement in the assessment district as planned and carried out, was not and could not be, under the facts shown, just and equal between the parties assessed, or according to benefits.

It is urged against this by defendants that the plaintiff's remedy, if any, was by a bill in chancery; that assessment in proportion to frontage is the method authorized by statute, and has many times been sustained by the courts as a rule of apportionment on the whole more just than any other; that plaintiff is estopped from now objecting through having stood by and allowed the work to be done without taking action, and especially by reason of the village council having confirmed the special assessment roll.

At the conclusion of the testimony on the trial of said cause both parties asked for a directed verdict on the undisputed evidence. The court was of the opinion that the questions raised by plaintiff could not be considered in view of the provisions of said section 2840, and directed a verdict for defendants, quoting the statute, and saying, "This special assessment was confessedly confirmed by the council, and in my judgment it thereupon became final and conclusive."

At the inception of this inquiry we are confronted with a somewhat novel situation, radically different from any of the cases cited by counsel, in the particular that here the pavement in the same assessment district is of varying width, and a uniform front-foot cost is assessed, while in those cases the pavement is of uniform width, and the assessment presumptively equitable, as each owner is required to pay the same for the same amount of paving in front of each foot of his property. Can such presumption arise here, where the record discloses no reason why the pavement was not made of uniform width, or why the charge was uniform? Or, to go farther back with the inquiry, does the uniform foot-front rule authorized by the statute contemplate or permit its application, in one assessment district, to a plan of improvement with such variations in different parts of the district? If so, it would seem to follow that the authorities can, in their discretion, provide for a cheap and inferior pavement 20 feet wide in front of one man's property and an expensive pavement of superior quality 60 feet wide in front of that of another, and assess each the same amount per front foot. The improbability of this being done does not affect the principle. It is only a matter of degree.

While the cost of preparing the highway for paving may vary along different parts of the way, the rule contemplates that exact equality cannot be reached

in tax cases, and approximate justice is attained when each owner pays for the same kind of finished improvement in front of his property in proportion to frontage. It is said, "The idea that underlies statutes for this purpose is, that the benefit to the abutting lots is generally in proportion to the length of their respective fronts, and that as a rule this principle of apportionment is more just than any other" *(Thomas v. Gain,* 35 Mich. 155 [24 Am. Rep. 535]) ; and the principle is sought to be strengthened in our statute by a provision that where, owing to the size or shape of a particular lot, the rule works particular injustice, the authorities may assess such lot for such number of feet frontage as in their opinion would be just.

"The whole tenor of the law upon that subject is to maintain an equal foot-front assessment on all property, equitable and proportionate to benefits, with a discretion given the assessing authorities to assess for a less number of feet, but at the regular price per foot in cases where justice and equity demand it." *Cote v. Village of Highland Park,* 173 Mich. 201 (139 N. W. 69).

We think the uniform foot-front rule contemplates a uniform system of improvement within the assessment district. If the municipal authorities decide it expedient to build pavements of materially different width or quality in different localities, they could and should provide different assessment rolls, in different assessment districts, therefor. We think this course is contemplated and authorized by section 2786, 1 Comp. Laws.

Confirmation by the council of any special assessment roll which, in its application to proposed improvements, violates the fundamental principles of the statute on which its validity depends is not final and conclusive upon that question.

In connection with the steps taken subsequent to the disorganization of Fairview in 1907, it is urged

that the city of Detroit cannot be held liable in this action, because it never received, and is not entitled to, any of this money paid by plaintiff under protest; that the tax was not levied upon land annexed to the city. The steps referred to were taken under Local Act No. 1, p. 56, Extra Session 1907, which provides:

"All suits or actions, either at law or in equity, hereafter commenced upon any debt, obligation or right of action, in favor of or against said village (Fairview) shall be prosecuted by or against the city of Detroit and the village of Grosse Pointe Park as the case may be. Any judgment hereafter rendered upon any such debt or obligation or in any such suit shall be paid by said city of Detroit and said village of Grosse Pointe Park in the above proportion and may be enforced as judgments against municipalities are usually enforced and as provided by law for the enforcement of judgments against the city of Detroit and villages."

Under said act the city of Detroit and village of Grosse Pointe Park acquired together all the property and rights of the village of Fairview, and became responsible for its obligations. With the aid of a court of chancery, they adjusted such matters between themselves; but this did not necessarily relieve either as to third parties. This paving was done by Fairview as one improvement in a single district now partly belonging to Detroit and partly to Grosse Pointe Park. If a wrong was done, it was inflicted when the assessment was made and confirmed, and affected one way or the other all property then within the assessment district. Grosse Pointe Park, as to third parties at least, in putting the unpaid tax on its tax roll, was acting for both itself and Detroit, and the county of Wayne collected it for both. Plaintiff is not concerned with the accounting and division of interests between these two. Under the special act referred to we think that, if the village of Fairview would have been liable, both defendants to this action

are liable; the judgment when obtained, however, to be paid or enforced in the proportion and manner specified in the statute.

Plaintiff's position in this litigation is consistent with his attitude and protests to the village authorities when the assessment was levied, and the pavement laid. He was agreeable to the improvement, and did not desire to prevent it, but protested that the assessment was inequitable and unjust, not made on a proper basis under the statute, and that he should not be compelled to pay for 60 feet, unless that width was laid in front of his premises. On the trial in the lower court his counsel, though insisting that the tax is invalid in its entirety, and asking a judgment to that effect, if an equitable reduction could not be legally made, said, "Mr. Corby would prefer to adjust all the equities right here;" and on the oral argument in this court took the same position, saying, "We went to the council and asked for 60 feet, and they refused us, * * * our whole objection is their charging us for what we did not get," and suggested that this court could equitably and finally dispose of the matter along lines indicated in *Fletcher Paper Co.* v. *City of Alpena,* 160 Mich. 462 (125 N. W. 405).

Defendants' counsel say to this, "Plaintiff having placed his case on equitable grounds, equitable rules should be applied," citing *Tuller* v. *City of Detroit,* 126 Mich. 605 (85 N. W. 1080), and cases cited there; *Nowlen* v. *City of Benton Harbor,* 134 Mich. 401 (96 N. W. 450) ; *Farr* v. *City of Detroit,* 136 Mich. 200 (99 N. W. 19) ; and *Stewart* v. *City of Detroit,* 137 Mich. 381 (100 N. W. 613).

These cases and many others which might be cited apply the equitable doctrine of estoppel to persons who had knowledge that improvements which enhanced the value of their property were being made, stood by, and took no steps to prevent them proceed-

ing, but later, after having received the benefit of the same, brought suit to defeat the tax on technical grounds, and thus escape paying their just share of the cost of such improvements.

In this case plaintiff, not objecting to the improvement, and standing willing to pay his just share according to a proper assessment, timely interposed his objection to the unjust excess imposed upon him by the method of assessment pursued. As applied to that portion of the tax which he ought of right to pay, those authorities are well in point.

In this equitable action of assumpsit it is permissible, under *Fletcher Paper Co.* v. *City of Alpena, supra,* and cases there cited, to conclude this litigation by a judgment in plaintiff's favor for the amount his taxes were unjustly increased by reason of the wrongful assessment, together with the penalties, interest, and fees relating thereto and collected, provided the record furnishes sufficient data therefor; and we are asked to do so.

Taking the full amount assessed and the total number of square yards as a basis, the overcharge of which plaintiff complains is $808.67. Deducting this from $3,826.08, the amount actually assessed against him, his just tax, due July 24, 1905, would be $3,017.41. He did not pay or tender this until June 27, 1911. We cannot agree with his contention that no interest, penalties, or fees should be added to this amount. It is true that delays and a somewhat chaotic condition of municipal affairs in that territory resulted for a time from the disorganization of Fairview village and subsequent readjustments; but the facts remain that the improvement in front of plaintiff's property had been made, and he had the benefit of it during all the intervening time, and paid nothing. To stand on equitable grounds as to his just proportion of the tax, he could and should, when it was due, have paid or

tendered that amount to the village treasurer. We see no equitable reason why he should be relieved from interest and fees as to that which he of right should have paid when due.

The record shows that on the trial in the court below all parties requested the court to direct a verdict, claiming no questions of fact for a jury were involved; the only issue being upon propositions of law.

The case will be remanded to the trial court, with instructions to compute the tax against plaintiff as above indicated, and enter a judgment in his favor for the balance. Plaintiff will recover costs of both courts.

MCALVAY, C. J., and BROOKE, KUHN, STONE, OS-TRANDER, BIRD, and MOORE, JJ., concurred.