60 510
62 557
63 703
64 684
65 398
60 510
66 218
60 510
72 109
60 510
78 283
60 510
83 110
60 510
87 462
60 510
88 272
60 510
90 319
60 510
94 218
60 510
108 572
60 510
f119 328
60 510
123 540
60 510
139 ² 33
60 510
150 ² 33
60 510
145 ²398

## PENINSULA IRON AND LUMBER COMPANY v. THE TOWNSHIP OF CRYSTAL FALLS.

### (No. 2.)

*Assessment roll—May be made by a clerk under direction of supervisor, who fixes valuations— Wild land—Examination of—If impossible owing to size of township, in absence of fraud, assessment valid without—Board of review—Sole tribunal to pass upon objections to valuations, in absence of fraud in fact in assessment—Town board—Time for voting town and highway tax—Not fixed by How. Stat. sec. 750—But must be at regular meeting—Clerk's certificate of vote—May be made at any time prior to second Monday in October—Sole purpose of its delivery to supervisor is to place it before board of supervisors—Township expenses—Employment of night-watch in unincorporated village in township, sustained—Also his payment from liquor-tax fund—Payment of tax under protest—Protestant, in suit to recover tax, confined to objections specified—Increased tax levy caused by illegal expenditures during previous year, not for that reason invalid—Highway money— May be raised for use in townships having no roads, if levy made in good faith—Expenditure on roads where right of way has not been legally acquired, legal—Also raising of money for like purpose, if land-owner makes no objection to use of road—Contrary rule would destroy statutory user.*

1. The clerical work of making out an assessment roll was performed by a clerk under the direction of the supervisor, who estimated and fixed

the valuation of the property assessed without any assistance from the clerk, he simply placing such valuation on the roll as instructed by the supervisor.

*Held*, that the action of the clerk had no tendency to invalidate the assessment.

2. An *organized* township contained nine *surveyed* townships of land, several of which were in a wilderness condition. The supervisor, in making his assessment, examined the land in two townships, but an examination of the remaining *wild* land was impossible prior to the meeting of the board of review. He had formerly been through the unexamined townships, and made inquiries as he had opportunity of persons who were supposed to know the value of the lands therein, and made what he considered a fair estimate of their true cash value, upon a fair average of the lands, basing his judgment upon his *own* knowledge and *that* derived from said inquiries. The owner of the lands did not appear before the board of review, and had not furnished the supervisor with any information as to the value of its *uncut* lands in the unexamined townships, but in a suit brought to recover the taxes levied thereon under such assessment,—which were paid under protest,—claimed that the supervisor should have, personally or by agents, examined each parcel of land, and could not legally assess the wild, uncut lands at a uniform rate of six dollars per acre, being the value adopted in making the assessment.

*Held*, in the absence of proof that the supervisor acted fraudulently in making the assessment, that the demand of the plaintiff that the court submit to the jury the question whether the supervisor used his best judgment and information, and assessed the lands at their true cash value, was properly denied.

*Held*, further, that by failing to present its case before the board of review, the proper tribunal for adjusting such matters, plaintiff lost the right to assail the assessment in the courts, unless it can show that the supervisor or such board acted fraudulently in the premises, or show some misconduct on the part of the supervisor amounting to fraud in law.

*Held*, further, that a supervisor is not required by the law to perform impossibilities, and that in the absence of any showing whatever that his valuation of the " uncut " lands at six dollars, and the " cut " lands at one dollar and fifty cents, per acre, has in any way damaged the owner, the Court will not hold such action as amounting to a legal fraud vitiating the roll.

3. The statute authorizing a township board to vote money to defray township expenses when the electors have neglected to perform that duty, does not specify at what time, or within what time, such vote shall be taken, and it is only necessary that it be had at a *regular* meeting of the township board. How. Stat. § 750.

4. The object of the statute requiring the township clerk to deliver to the

supervisor a certified copy of the record of the vote of the township board raising taxes to defray township expenses, is that it may be delivered by that officer to the clerk of the board of supervisors on or before the second Monday in October, to be passed upon by that body (Tax Law of 1882, § 23—How. Stat. p. 1272); and such certificate could be executed and delivered after the first Monday in October, if in time for such delivery to the county clerk. *Smith v. Crittenden*, 16 Mich. 155.

5. Proof of the misappropriation of township money in a prior year does not tend to prove that new township officers intended, when voting a tax, to follow the example set by their predecessors.

6. The payment by the township authorities of money to employ a night-watchman in an unincorporated village forming part of the township, containing from ten to twelve saloons, such payment being made from the liquor tax derived from such saloons, is not an illegal expenditure of township money.

7. In a suit to recover taxes paid *voluntarily*, but under protest, the tax must be shown to be illegal for the reasons specified in the protest. *Peninsula Iron & Lumber Co. v. Crystal Falls*, 60 Mich. 79.

8. A tax levy for township purposes is not invalid because its amount was necessarily increased by reason of illegal expenditures, or an unauthorized loan of township funds, the preceding year. *Wright v. Dunham*, 13 Mich. 414.

9. Where a township board voted money for general highway purposes to be expended in the townships where the money was raised (such township containing several surveyed towns), and there appeared to have been no departure from fair dealing in the tax levy, the fact that there were no roads in two of said towns will not invalidate such tax.

10. The fact that highways have been laid out in a township without legally acquiring the use of the lands from the owners, and that highway money has been expended in improving such roads, and that taxes voted by the township board for general highway purposes are intended to be so used when levied and collected, will not necessarily void such levy. As long as such roads are used and treated as highways, with the consent of, or without any objection from, the persons interested in the land over which they pass, such tax can be legally used for the purpose of improving and keeping such roads in repair. A contrary doctrine would prevent the statutory user, which may take the place of legal proceedings to acquire title to a highway.

Error to Marquette. (Grant, J.) Argued February 4, 1886. Decided April 15, 1886.

Assumpsit to recover taxes paid under protest. Plaintiff

brings error.    Affirmed.    The facts are stated in the opinion and head notes.

*F. O. Clark* and *Ball & Hanscom,* for appellant:

Where the assessor employs another to make the valuation of property the assessment is void: *Snell v. Fort Dodge,* 45 Iowa, 564; *Stokes v. State,* 24 Miss. 621. "The *listing* of the property is clerical, but the ascertaining and determining its valuation is judicial, requiring the judgment of the supervisor under his oath of office, and cannot be dispensed with in making a valid assessment roll": *Woodman v. Auditor General,* 52 Mich. at page 30. This renders it necessary that the supervisor should pass judicially upon the value of each parcel of property upon the roll; and he must have some definite facts with regard to such value, within his knowledge, upon which to pass such judgment. In this case he had no such knowledge; the roll was in fact made by Samuel E. Byrne, who took the descriptions from the roll of the previous year, and put the values at a uniform rate over the nine townships, with a few limited exceptions of mining property. Such a valuation would necessarily operate unjustly: *Hersey v. Barron Co. Supervisors,* 37 Wis. 80–1. In this State all assessments must be at the *cash value* of the property taxed; and this statutory provision is nullified by such an assessment as was made in this case: *Marsh v. Supervisors,* 42 Wis. 509–10; *Smith v. Cleveland,* 17 Wis. 656; *County of Santa Clara v. Sou. Pacific R. R. Co.,* 18 Fed. Rep. 385; and uniformity of taxation requires uniformity in the mode of assessment as well as in the rate of percentage charged: *San Mateo v. Sou. Pac. R. R. Co.,* 13 Id. 145, 722.

While the misappropriation of money raised for a *legal* purpose would not avoid a tax, to raise money to be used for purposes not authorized by the statute makes the tax void as to the amount thus raised for unauthorized purposes: *Lacey v. Davis,* 4 Mich. 140; *Amberg v. Rogers,* 9 Id. 332; *Wright v. Dunham,* 13 Id. 414; *Case v. Dean,* 16 Id. 13; *Edwards v. Taliafero,* 34 Id. 13; *Hammontree v. Lott,* 40 Id. 190; *Stockle v. Silsbee,* 41 Id. 615; *Silsbee v. Stockle,* 44 Id. 561.

There is no statutory provision authorizing a town clerk to certify the amount of money voted by the township meeting or board, for highway purposes, to the supervisor *after* the first day of October; and while it may be conceded that he may be compelled to perform this duty *after* that date, yet he could only legally include the sums legally voted up to

and including the time when he should, by statute, have delivered such certificate to the supervisor. If subsequent to that time the town board vote other taxes, no legal obligation rests on the clerk to certify the same, and he cannot by his delay give authority to the town board to execute powers which had expired by lapse of time: *Wall v. Trumbull*, 16 Mich. 243; Laws of 1865, act 217, § 4; *Miller v. Grandy*, 13 Mich. 548; *Mix v. People*, 72 Ill. 241; *Cowgill v. Long*, 15 Ill. 202; *People v. Cooper*, 10 Bradw. (Ill. Ct. of App.) 384.

It appears from the evidence that there were no *legal* highways in the township of Crystal Falls, and that the highway tax voted to be raised was for use on private roads, and was therefore for an unlawful purpose. If this does not vitiate the tax, then it may be raised in townships where there are no roads, actual or projected; but the Court held this could not be done, in *Sawyer-Goodman Co. v. Township of Crystal Falls*, 56 Mich. 599. [Remainder of brief confined to discussion of laying out highways.—REPORTER.]

*Hayden & Young*, for defendant:

No inequalities of assessment, however gross, can vitiate a tax in the absence of wilful misconduct on the part of the supervisor or board of review: Laws of 1882, § 85 (How. Stat. p. 1288).

The failure of plaintiff to apply to the board of review for relief from the alleged improper assessment, is a waiver on its part. The board of review is the *sole* tribunal before which to try such a question; the courts have no jurisdiction: *Youngblood v. Sexton*, 32 Mich. 414; *Williams v. City of Saginaw*, 51 Id. 120.

The intent of the law in requiring the tax on saloons to be paid into the contingent fund of the municipality where located, is that police protection may be secured and paid for: *Kitson v. Mayor, etc., of Ann Arbor*, 26 Mich. 330; *Doran v. Phillips*, 47 Id. 230.

MORSE, J. Plaintiff brought suit in the circuit court for the county of Marquette to recover taxes paid under protest.

The corporation paid taxes assessed upon 10,120.24 acres of land for the year 1884. The tax known as "township" or "contingent" tax amounted to $168.15; highway tax, $378.20; county and state taxes, $532.88; total, $1,079.23.

The tax was paid and protest filed December 26, 1884. Under the ruling of this Court in *Peninsula Iron & Lumber Co. v. Township of Crystal Falls*, 60 Mich. 79, it being a voluntary payment, this suit must be based upon the specific allegations of the protest.     The cause was tried before a jury, who, under the charge of the court, found a verdict for the defendant, upon which judgment was entered.

Most of the objections against the validity of this tax seem to come within the rulings of this Court in the case of *Sawyer-Goodman Co. v. Township of Crystal Falls*, 56 Mich. 597.     This was a suit against this same township, defendant here, for taxes paid under protest, assessed and levied in 1883.

The first claim under the protest, and upon the argument here, is that the assessment roll is void, not having been made by the supervisor; and that the property was not estimated by him at its true cash value, according to his best information and judgment.

The evidence shows that the clerical work of making out the roll was done by one Byrne, who placed the valuations of most of the lands upon the roll under the direction of the supervisor.     It appears, however, without contradiction, both by the testimony of Mr. Byrne and the supervisor, that the valuations of the lands were estimated and made by the supervisor, and not by Byrne.     In no instance did Byrne, in any way, undertake to fix or assist in fixing values.     Whatever values he put down were placed upon the roll under and by the instructions of the supervisor.     His duties were only those of a clerk, and his action had no tendency to invalidate the roll.

It is asserted that the supervisor did not pass judgment upon the lands described in the roll, and did not assess them at their true cash value, because he assessed a large lot of the lands not cut, uniformly at $6 per acre, and "cut" lands, being lands upon which the pine timber had been cut, at $1.50 per acre.

This town, as was said in *Sawyer-Goodman Co. v. Crystal Falls Tp.*, contains nine surveyed townships, each six

miles square, and on several of these the wilderness is nearly unbroken. It was not possible for the supervisor to visit and inspect each parcel of land upon the roll. The supervisor did all, in our judgment, that it was necessary for him to do under the circumstances. The supervisor testifies that he commenced his labors as soon as he was elected, and continued at work, more than eight hours a day, up to the time of the meeting of the board of review. He examined, during that time, personally, nearly all the lands in two townships. He could not reach all the townships, but had been through them before. He made inquiries whenever he had opportunity of persons who were supposed to know what the values of the lands were. He established his judgment upon his own knowledge and that derived from these inquiries. He made what he considered a fair estimate of their true cash value, upon a fair average of the lands. There is no evidence whatever to show that any of these lands were assessed for more than their cash value, or for any unequal assessment, so far as plaintiff's lands were concerned. What testimony was adduced tended to show that the lands of the plaintiff were all, not cut, worth from $50 to $60 per acre.

The plaintiff offered no proof of the value of its lands, and did not appear before the board of review to complain of the values placed upon them by the supervisor; nor does the counsel for plaintiff here urge that the valuation was either fraudulent, unjust, or unequal in fact, to its detriment, but is contented with the argument that the supervisor should have personally inspected every parcel, or employed agents to do it, and could not legally assess these wild lands at a uniform rate of six dollars per acre.

These same objections were made and overruled by this Court in the case of *Sawyer-Goodman Co. v. Crystal Falls Tp.*

The circuit judge instructed the jury, in substance, that there was no evidence in the case tending to show that the supervisor acted fraudulently in the assessment, but that he appeared to have acted honestly, according to his best

judgment and information, and that was all the law required.

It is urged that he should have, at least, submitted to the jury the question whether the supervisor used his best judgment and information, and assessed the lands at their true cash value.

We do not think so. There was no conflict in the evidence. The plaintiff corporation did not appear before the board of review, presumably because it could not rightfully complain that its lands were assessed too high or unequally, as compared with other lands. On the contrary, it is evident that if there was any inequality in the assessment, which is by no means certain, this company were not sufferers, but gainers, thereby, and have no just cause of complaint. If there was any inequality in the assessment against the plaintiff's lands, by failing to present its case before the board of review, the proper tribunal for adjusting such matters, it has lost the right to assail the assessment in the courts, unless it can show that the supervisor or the board of review acted fraudulently, or some misconduct on the part of the supervisor amounting to fraud in law: Section 85, Tax Law 1882; *Williams v. City of Saginaw*, 51 Mich. 120; *Porter v. Rockford, R. I. & St. L. R. Co.*, 76 Ill. 598; *Humphreys v. Nelson*, 115 Ill. 45.

There was no tangible claim of any fraud or misconduct on the part of the supervisor to be deduced from the evidence. He acted honestly and in good faith, and did all that, under the circumstances, could be expected of any public officer. He was not required to perform impossibilities, and, in the absence of any showing whatever that his placing the wild lands upon the roll at the uniform rate of $6 and $1.50 per acre, according to their condition as to being cut, has in any way damaged the plaintiff, we are not disposed to hold such action as amounting to a legal fraud vitiating the roll. The plaintiff, by its agents, furnished the supervisor with affidavits, informing him of the descriptions of their " cut " lands, and, if dissatisfied with the assessment of the other parcels, should have gone before the board of review with their grievances, and

had the values corrected. The object of the law is not to defeat a tax for irregularities or technicalities, but only when substantial injustice has been done. The action of the supervisor has not increased the taxes upon plaintiff's lands, but, on the contrary, has lessened them. If he had listed and assessed these lands in the manner the plaintiff now claims he should have done, the values of its lands would have been much greater than they were as placed upon the roll. The plaintiff cannot be heard to complain of this: *Case v. Dean*, 16 Mich. 25, 26; *Stockle v. Silsbee*, 41 Mich. 615; *Moss v. Cummings*, 44 Mich. 359.

If this corporation were about to sell its lands, it would probably average the price per acre upon the whole tract, and there is not a *scintilla* of evidence tending to show that there was any particular difference in the value of the different parcels of the lands of this corporation, except as between the two classes of " cut " and " uncut." See *Sawyer-Goodman Co. v. Township of Crystal Falls*, 56 Mich. 597.

The fact that there was a difference between the value of hard-wood and pine lands in the township can have no bearing on the question here, without any showing that the lands of this corporation plaintiff were divided into hard-wood and pine, and that there was such a valuation of these as to make their assessment unequal and unjust as compared with the assessment of any such lands of the same quality belonging to others. There was no pretense of any such showing in this case.

The second objection to the tax is stated in the protest as follows: Township taxes were not voted by the electors, and were largely in excess of the amount required for the ordinary expenses of the township, and much greater than required for any legitimate purpose, and were intended for the payment of specified salaries to township officers of a large amount and not authorized by law.

The electors failing at the annual township meeting to raise the necessary amount for township or contingent expenses, the township board, at a regular meeting, held October 2, 1884, voted $4,000 for that purpose, which amount

was passed upon and approved by the board of supervisors at their October session of that year.

It is claimed that the township board had no power to vote the same on or after October 1st, because the statute provides that the township clerk shall, on or before the first day of October, make and deliver to the supervisor a certified copy of all records of any vote directing money to be raised thereon for taxation for township purposes : Section 23, Tax Law 1882.

The statute authorizing the township board to vote moneys to defray township expenses when the electors have neglected to do so, does not specify at what time, or within what time, such vote shall be taken.    It is only necessary that it be at a regular meeting :   How. Stat. § 750.[1]

The object of the requirement that the township clerk shall furnish the supervisor with a certified copy of such vote, is for the purpose of delivery of the same by such supervisor to the clerk of the board of supervisors on or before the second Monday in October :    Section 23, Tax Law 1882.[2]

---

[1] How. Stat. § 750.  " Whenever the qualified electors of any township, at the annual township meeting, shall neglect or refuse to vote such sum or sums of money as may be necessary to defray the *ordinary* township expenses, the township board of any such township is hereby authorized, at any *regular* meeting, to vote such sum or sums as may be necessary for *that* purpose, not exceeding such amounts as are, or may be limited by law."

Amended by act No. 60, Session Laws of 1887, p. 66, so as to *limit* the amount to be raised in any one year to one thousand dollars.

[2] How. Stat. p. 1272, § 23.  " It shall be the duty of the township clerk of each township, on or before the first day of October of each year, to make and deliver to the supervisor of his township a certified copy of all statements and certificates on file and of all records of any vote or resolution in his office authorizing or directing moneys to be raised therein by taxation for township, school, highway, and all other purposes, together with a statement of the aggregate amount thereof; and such certified copies shall by such supervisor be delivered to the clerk of the board of supervisors of the county, on or before the second Monday of said month, and the same shall, by said county clerk, be laid before the board at its annual meeting, and filed in his office."

Section 23 of act 153, Session Laws of 1885 (our present tax law), is a copy of the above.

It was held in *Robbins v. Barron*, 33 Mich. 124 (approved in *Upton v. Kennedy*, 36 Id. 215) that action by the board of supervisors under How. Stat. § 1031, authorizing the levy by the township of taxes for the amounts certified by the town clerk under section 1026, was not essential to the validity of such levy.   It will be seen that the power and duty

The information contained in this certificate is not for the use of the supervisor, but for the board of supervisors, who act upon the certificate. He is but a mere instrument of conveyance. The board of supervisors, as shown by the record, had the certificate of this vote, and acted upon it. It seems to me to be a sufficient compliance with the statute. The object of the statute was accomplished when the certificate was presented in due time to the board of supervisors, and they approved the levy, and the clerk of the board gave the necessary certificate to the supervisor to levy the amount. There is no express or implied prohibition in the statute against this action of the township board. The board of supervisors also had jurisdiction. The tax cannot be defeated for a mere irregularity not affecting the jurisdiction of the bodies imposing the tax : Section 85, Tax Law 1882.

The certificate could be executed and delivered by the clerk after the first Monday, if it was in time for the second Monday, in October : *Smith v. Crittenden,* 16 Mich. 155. There is no evidence tending to show that this money was voted for the purpose of illegal expenditures, and the circuit judge was correct in so charging the jury.

Evidence was introduced for the purpose of showing an illegal expenditure of the money raised the year before, but, even if such money had been used for illegal purposes, it had no tendency whatever to prove that a town board, composed of different persons than the one for the year before, intended to follow in their track : *Wright v. Dunham,* 13 Mich. 414.

It appears that for the year 1883 there was a liquor tax collected in the township of $4,181.75, and in 1884 of $3,517, all of which, except $297, was paid in May of that year. It was shown that out of this liquor tax, which by law goes into the contingent fund, there was paid in the year 1883 quite a large amount for the services of a night-watchman in the village of Crystal Falls (not organized, but a part of the

of the board of supervisors in acting on such certificates are largely *increased* by section 24, Laws of 1882 (How. Stat p 1272), and section 24, Laws of 1885, p. 184; but what effect these changes have, if any, upon the law as laid down in the cases cited, is perhaps an open question.

township), and for building sidewalks, and in 1884 for the services of the watchman, but not for sidewalks.

We are not prepared to say that the expenditure for a night-watchman is an illegal one. From the amount of money paid in for liquor tax there seem to have been from ten to twelve saloons in this village of Crystal Falls, which contains about 700 people, and is situated in a mining and lumbering community. It will be seen at once that the very presence of the places from which this large revenue is derived necessitates an increase of police force, and an unusual watchfulness to preserve the peace and property of the citizens of the township; and there is no instrumentality through which this can be done, save private organization, other than the local township government.

It is unnecessary to pass upon the legality of using the contingent fund to build side or cross walks, as the absence of any expenditure for that purpose in 1884 would certainly look as if it was not intended to be continued in 1885, although it was so used in 1883.

But it is urged that one of the township board testified that in estimating the sum to be voted for 1885 they did not take into contemplation the liquor-tax fund, as they intended to use that for the purposes of building walks and paying a watchman. But there is no allegation in the protest that any taxes were voted for this purpose, the illegal use being confined to the payment of illegal salaries of township officers.

As before shown, the only right to sue for a payment, which would have been voluntary and not recoverable in this action except by force of the protest under the statute, rests entirely upon the protest; and, in the language of the statute, the tax must be shown to be " illegal for the reasons specified in the protest:" Section 42, Tax Law 1882 ; *Peninsula Iron & Lumber Co. v. Township of Crystal Falls*, 60 Mich. 79.

The question of salaries, as raised in this record, does not differ from that brought before this Court in *Sawyer-Goodman Co. v. Crystal Falls Tp.*, 56 Mich. 600, and must be governed by the decision in that case.

If, by reason of this alleged illegal expenditure of the contingent fund in 1883, or by an illegal or unauthorized loan, as claimed, to the highway fund, it became necessary for this township to raise more money for legal expenses than would otherwise have been required, such levy does not thereby become invalidated by the taint of last year's fraud or illegality. "If so, a single misappropriation of money would lose all power to levy and collect taxes thereafter :" *Wright v. Dunham,* 13 Mich. 415.

We think the court below was right in instructing the jury that the plaintiff had failed to adduce any testimony tending to show this levy of $4,000 to be void or invalid.

The objections to the highway tax are two, namely :

*First.* The highway taxes were not authorized by the vote of the electors, nor by any officers having authority to levy the same.

*Second.* There are no highways in any of the surveyed townships where said lands (of plaintiff) are located, and no highway taxes could be lawfully levied thereon.

The first objection is based upon the same claim of invalidity made against the voting of the contingent fund, to wit, that it was voted by the township board upon the second day of October. The highway taxes, upon certification by the township clerk, are dealt with thereafter, as to presentation to board of supervisors and their action and approval, and the certificate of their clerk, the same as are the contingent or township taxes, and therefore are governed by what has heretofore been said in this opinion as to the same objection to the township tax in this case.

The evidence shows that in two of the townships there were no roads at the time of the vote to raise the money for highway purposes, but there was no showing that roads were or might not be needed in such townships during the year for which the taxes were levied, and it clearly appeared that the intention of the township board was to expend the money so levied in the townships where the money was raised, the money assessed upon the lands in any one township to be expended upon the roads in that township. There

appears to have been no departure from fair dealing in the levy of this tax, and the fact that there were then no roads in these townships will not invalidate the tax : *Sawyer-Goodman Co. v. Crystal Falls Tp.*, 56 Mich. 599.

The further fact that roads have been laid out in these townships without the legal requisites to acquire the use of the lands from the owners, and that highway moneys have been expended thereon, and are intended to be so used in the future, will not necessarily void the levy.

As long as these roads are used and treated as highways, with the consent or without any objection from the persons interested in the lands over which the roads pass, the tax can be legally used for the purpose of improving and keeping them in repair.

Highways can be acquired by user as well as by proceedings under the statute. It would be a singular rule to establish that no highway funds could be used to work a road not legally laid out under the statute, when no land-owner makes any complaint, or puts any obstacle in the way, of the public passage over his premises. It would prevent the very user which the law provides may be substituted, by sufficient time of such use, for the statutory proceedings to acquire title to a highway.

It appears from the evidence that many of these highways, being in the first instance private roads to mills and mines where there were settlements of the people engaged in labor there, have been adopted as public roads by the consent and also request of the land-owners. If thus used for ten years or more, they would become public highways without any proceedings under the statute. It appears that the moneys in other years expended upon these roads have been so expended at the special instance and request of the large corporations doing business and owning taxable property in the township, the plaintiff corporation being among the number. It seems that having obtained the building of roads by the public moneys to their places of business, for their benefit, they seek now to take advantage of an alleged

wrong, to which they were parties, as a fact tending to show a contemplated continuation of the same wrong in the future.

While this course upon the part of these corporations does not commend itself to the Court, it is also a fact to be noticed that, although this has been done in the past, there is no evidence tending to show that the township officers, in voting the tax under consideration here, intended to be persuaded or led into any such action in the future. There is nothing to show that the money raised in these townships was not intended for the honest building and repairing of needed roads ; nor, considering the extent and character of the township, and the business of its people, do we consider such levy by any means excessive.

We do not consider it necessary to notice in detail the exceptions taken upon the trial to the admission of matters offered in evidence. Most of them were legitimate matters, relevant to the issue, and those not relevant of such a character that their admission could not in any way have affected the result.

Upon the whole case as made, or upon the case as it would have stood without such matters in evidence, the court could have done no less than to instruct the jury, as he did, to find a verdict for defendant.

The judgment is therefore affirmed, with costs.

The other Justices concurred.