AURORA IRON MINING CO. *v.* CITY OF IRONWOOD.

1. TAXES—PAYMENT UNDER PROTEST—IRREGULARITIES IN ASSESS-
MENT.

In an action to recover taxes paid under protest, the assessment
cannot be shown to be invalid for reasons not specified in the
protest.

2. SAME—OVERVALUATION—REVIEW OF ASSESSMENT.

The court will not interfere with an assessment, in the making
and confirming of which the assessor and board of review
acted in good faith, because of an alleged overvaluation of
the property.

Error to Gogebic; Haire, J.   Submitted January 5,
1899.   Decided February 6, 1899.

*Assumpsit* by the Aurora Iron Mining Company
against the city of Ironwood to recover taxes paid under
protest.   From a judgment for defendant, plaintiff brings
error.   Affirmed.

*C. E. Miller*, for appellant.

*George Hayden*, for appellee.

MOORE, J.   In December, 1892, the plaintiff paid, un-
der protest, to the defendant, its taxes, amounting to
$20,245.55.   Within 30 days thereafter it brought suit to
recover back the amount thereof.   The case was tried in
July, 1894, before the circuit judge without a jury, and
was argued here at the present term.   More than 80 errors
are assigned, but those insisted upon are stated as follows
in the brief of counsel:

"1. It is claimed that the body which imposed the taxes
for 1892 in the city of Ironwood was not the legal common
council of the city of Ironwood, for the reason that no
quorum was present at that time.

"2. It appears, from the records, that the taxes were levied at what was known as a 'special meeting' of the council, and that there is no proof of the service of any notice of such special meeting, although all the members of the common council were not present at the time of imposing such taxes.

"3. The valuations of property of the city of Ironwood made by the assessor of the city were unjust and inequitable, and the property of the plaintiff was assessed very much above its market value by the assessor, and this high assessment was made by the assessor without pursuing any proper course to determine its correct value.

"4. The board of review of the city of Ironwood acted illegally, in not giving the plaintiff an opportunity to be heard before them before the fixing of the valuation upon the plaintiff's property by such board of review.

"5. The board of review, in fixing valuations in the city of Ironwood, including the valuation of the plaintiff's property, acted illegally, in that it did not exercise its judgment at all in fixing such valuation, but, on the contrary, it decided such valuation by lot, and, as a result, the property of the plaintiff was assessed at very much above its market value, whereas other property in the city of Ironwood was assessed at very much below its market value.

"6. The board of review acted illegally and inequitably, in that it assessed the plaintiff's property at an amount above its market value, and assessed the property of the Metropolitan Iron & Land Company, in the city of Ironwood, at below its market value; and this action of the board of review was taken willfully, and with full knowledge that such valuation upon plaintiff's property was too high, and that the valuation upon the property of the Metropolitan Iron & Land Company was too low."

Of these grounds for reversal, the first, second, and fourth were not covered by the protest filed, and for that reason will not be considered.

As to the remaining propositions, the circuit judge made findings of fact as follows:

"The valuation placed by the assessor upon the property in question was not unjust or unfair, when compared with the valuations placed by the assessor upon other properties of like kind in that year in the city of Ironwood.

"The assessor of the city of Ironwood did not act unfairly, or willfully or knowingly wrong, in placing the valuation of the property of the plaintiff in controversy in this suit at the sum of $1,376,000, the amount at which the same was assessed by him.

"The assessor of the city of Ironwood was not guilty of any intentional wrong, or of any kind. of fraud, in fixing the valuation of plaintiff's property in question at the sum assessed upon it by him as shown in the evidence.

"The property of the plaintiff was not fraudulently overvalued by either the assessor or by the board of review, in said year 1892, for purposes of assessment of taxes thereon, either actually, or relatively with reference to the values placed upon other properties of like kind in said city in said year.

"I further find that an arrangement was made between all of the several mining companies owning mining property within the city of Ironwood with the assessor of the city, early in May, 1892, to which arrangement the plaintiff company was a party, and which was brought about by the suggestion of the managing officer of the plaintiff company, by virtue of which the assessor was to be furnished. by each company, sufficiently early in May to enable the assessor to make use of the same as a means of arriving at the relative values of the several mining properties for assessment purposes, with a statement, based on the estimates of the mining engineers of each company, or other best evidence within reach of each company, respectively, showing the estimated quantity of ore in sight in each mine above the bottom level at that time, and also the quantity of ore mined and in stock-pile at each of the said mines at that time. And I further find that accurate knowledge of the quantity of ore existing in the mines at that time, respectively, was the most certain and important factor to be taken into consideration by the assessor, together with the amount of undeveloped territory adjoining the mine itself, in determining the true and actual cash value of such property as a mine. I find it was also contemplated by the arrangement that the ore in stock-pile should be considered with the ore in sight in the mine in determining the value of the mine itself.

"I further find that all the mining companies, with the single exception of the plaintiff company, carried out the arrangement agreed upon, by furnishing statements of the information contemplated in the arrangement men-

tioned, but that plaintiff company did not furnish such statement or information, either to the assessor or the board of review, in time for their action thereon.

"I further find that the assessor gave due consideration to the statements rendered him pursuant to the arrangement mentioned. And I further find that, in the absence of any statement from the plaintiff company relative to the ore in the mine, the assessor acted properly, fairly, and honestly in placing such a valuation upon the property of the plaintiff in question as he was required by law to do, using his best judgment to that end.

"I further find that the board of review reduced the assessor's valuation upon the property of the plaintiff by the amount of $150,000, and that this reduction was a greater relative reduction than any reduction made by the board of review from the assessor's valuations placed upon other mining properties."

There was testimony upon which to base these findings. This being so, the court will not review the questions of fact. It is not claimed the assessor or the board of review acted fraudulently, but it is claimed they acted illegally and inequitably. The case is ruled by *Peninsula Iron & Lumber Co.* v. *Township of Crystal Falls*, 60 Mich. 510, and *Pioneer Iron Co.* v. *City of Negaunee*, 116 Mich. 430.

Judgment is affirmed.

GRANT, C. J., MONTGOMERY and LONG, JJ., concurred. HOOKER, J., did not sit.