STORY & CLARK PIANO CO. *v.* HILDERINK.

1. TAXATION—INCREASE BY BOARD OF REVIEW—RECORD—CLERK—
MEMORANDA.

   In making changes increasing the amount of property taxed,
   or assessed valuations, the board of review of a city, in
   the absence of the clerk, substantially complied with the
   requirements of the statute by directing one of the mem-
   bers to keep minutes, which he preserved in the form of
   rough memoranda, later filed with the clerk and prepared
   in typewritten form for permanent record in his office by
   the clerk (1 Comp. Laws, § 3323; 2 How. Stat. [2d Ed.]
   § 5853), where the memoranda, considered with the tax
   rolls, showed the changes so made, and where the amount
   of increase could be ascertained by computation, although
   the records did not show item by item the several amounts
   that the board added to or deducted from the valuations as
   fixed by the supervisors.

2. SAME—PREJUDICIAL ERRORS—STATUTES.

   No sufficient prejudice resulted to the taxpayer who ascer-
   tained the amount of increase and the fact of change
   from the rolls and memoranda kept by the board, and who
   was sufficiently informed to be able to file a protest; the
   tax being presumed to be valid under 1 Comp. Laws, §
   3922 (1 How. Stat. [2d Ed.] § 1870), and unless the ir-
   regularity was of a jurisdictional nature the statute cured
   the defect.

3. SAME—ASSESSMENT—CITIES—MUNICIPAL CORPORATIONS.

   Only if the official action can be shown to have been fraud-
   ulent could the court hold the tax illegal, and the fraud
   must be clearly established. 3 Comp. Laws, § 3899.

4. SAME—INTENT—STATUTES.

   Evidence considered and *held* not to establish the claim that
   the assessors or board of review had omitted any prop-
   erty from the tax roll intentionally.

Appeal from Ottawa; Cross, J. Submitted October
8, 1915. (Docket No. 29.) Decided December 21,
1915.

Bill by the Story & Clark Piano Company against G. J. Hilderink, one of the supervisors of the county of Ottawa, for an injunction. From a decree for defendant, complainant appeals. Affirmed.

*Lillie & Lillie,* for complainant.

*Louis H. Osterhous,* for defendant.

STONE, J. In this case the bill of complaint was filed July 7, 1914, to obtain an injunction to restrain the defendant as the supervisor of the First ward of the city of Grand Haven, from spreading taxes upon the property of complainant on the valuations fixed by the board of review, or on a valuation in excess of that placed thereon by defendant as supervisor. The complainant is a foreign corporation engaged in the manufacture of pianos and player pianos in said city—the same being a city of the fourth class—and having a factory in the First ward thereof. Defendant was, in the year 1914, supervisor of that ward, and as such assessed the real estate of the complainant at $72,000, and its personal property at $59,000, when he made up his assessment roll in the month of April. The board of review of the city met on the second Monday of May and remained in session 24 days thereafter, reviewing the rolls, examining the property throughout the city, and revising the tax rolls as prepared by the supervisors. At its session of June 11, 1914, the board of review, among other actions, increased the assessed valuation of complainant's real estate to $100,000, and the assessed valuation of its personal property to $100,000. On June 12th, the complainant filed with the board its protest against such increases, which protest was considered by the board on June 13th, and rejected. This protest is set forth in full in the bill of complaint. Thereafter this bill was filed.

We shall consider the claims of complainant in the

order in which they were treated by the court below. There are three principal propositions:

(1) The claim that the board of review did not keep a suitable record of its proceedings, and that its action was therefore without jurisdiction and void.

(2) The claim that the valuations placed on the real estate and the personal property by the board of review are excessive.

(3) The claim that the supervisors and the board of review omitted from the tax rolls more than $100,-000 in assessable property in the form of household goods, furniture, etc., thereby causing complainant to bear more than its just share of the burden of taxation.

There is in the bill of complaint no express charge that the board acted fraudulently or with any improper intention or purpose. The bill does claim, however, that the action of the board of review under the second and third headings constituted a fraud on complainant and wrongfully and fraudulently would compel complainant to pay more than its just share of taxes in the said city; and, generally, that the action of said board of review ·constituted a fraud in law against complainant, which, if not remedied, would compel complainant to pay more than its just share of the burden of taxation in said city. The case, being at issue, was heard, by the trial judge, upon the testimony taken in open court as in a suit at law. The hearing resulted in a decree dismissing the bill of complaint with costs to the defendant. The complainant has appealed.

The record is a voluminous one, for the reason that about 50 witnesses were sworn upon the question of the omission of personal property from the roll. We have read the record with care, and in disposing of the case shall not quote therefrom at any great length.

1. We will consider the claim that the board of review did not keep a sufficient and suitable record of its

proceedings. During the progress of the work of the board, one of its members, in the absence of the clerk, kept what might be termed rough minutes or memoranda of its proceedings. They were afterwards filed with the city clerk, and from them the clerk made up a permanent typewritten record to remain in his office, as testified to by him. It appears in evidence that on June 11th the board acted on the assessments of what are termed manufacturing properties of the city, including complainant's property. At that time the condition of the roll was as above stated in so far as it relates to complainant's property. On this day a motion was made to increase the real estate assessment to $100,000, and a further motion was made to increase the personal property assessment of the complainant to $100,000, also. The evidence shows that the roll was called by the chairman, and all the members of the board voted, "Yes." It further appears that, at the time, the supervisor of the First ward entered in his assessment roll, in the proper columns, the true cash value of the real estate as fixed by the board of review at $100,000, and the same amount as fixed by the board on the personal property. So far as it affected this property, the memorandum was as follows:

Story & Clark
    Real ........................... $100,000
    Personal .......................   100,000
                                         $200,000

All yes on roll call.

This memorandum of the proceeding was filed with the clerk, as above stated, and from it he made the following permanent typewritten record:

"Moved and supported that Story & Clark Piano Company's personal assessment be placed at $100,000 and the real at $100,000. Total $200,000. Which motion was carried."

On June 11th, the attorney for complainant was notified of the board's action, appeared at the board meeting, examined the rolls, noted the action of the board in increasing the valuations of complainant's property, and announced that he would file a protest. On June 12th, the same attorney filed with the board a long protest in writing signed by complainant, and, as we have above stated, on June 13th, this protest was considered by the board and rejected.

Upon the foregoing facts, complainant insists that the action of the board of review in increasing the valuation of its property was without jurisdiction, and was void, because the record of its proceedings kept by such board did not comply with the statute.

Section 3323, 1 Comp. Laws (2 How. Stat. [2d Ed.] § 5853), relates to the assessment and collection of taxes in fourth-class cities. That section requires the board to keep a record of their proceedings and of changes made in such rolls, and provides that the amounts added to, or deducted from, the total valuation in each ward, shall be entered upon such record, which record shall be deposited with the city clerk, who shall be clerk of said board.

It is the claim of the defendant that the record kept by the board sufficiently meets the requirements of the statute referred to, and it is urged that the record consists, not only of the brief memorandum complained of, but also of the tax rolls, in which, as each assessment was considered and acted upon, a supervisor set down in the proper column the valuation agreed upon by the board of review. The completed rolls, with the changes made, were duly indorsed by the clerk, and the minutes or memoranda of the proceedings were afterwards filed with the city clerk, and from them the permanent typewritten record was afterwards made by the clerk for his files. It is true that these records do not show, item by item, the several amounts

added to or deducted from the supervisors' valuations; but these amounts can be ascertained by computation, and in our opinion this makes a sufficient record, and is a substantial compliance with the statute. *Auditor General* v. *Ayer*, 109 Mich. 694 (67 N. W. 985); *Auditor General* v. *Sparrow*, 116 Mich. 574 (74 N. W. 881); *Auditor General* v. *Ayer*, 122 Mich. 136 (80 N. W. 997).

The real purpose of the law requiring the keeping of a record is, of course, to enable interested taxpayers, by an examination thereof, to learn what the board of review has done. Certainly, under the evidence in this case, this record was sufficient to inform the attorney for complainant of what had been done, because we find him promptly filing a protest against the action of the board. Under the statute referred to, when reviewed and certified to, as the roll in question was, it must be conclusively presumed by all courts and tribunals to be valid, and cannot be set aside except for causes mentioned in the general tax law of the State (section 3899, 1 Comp. Laws) relative to the assessment of property and the levy and collection of taxes thereon; and failure of the board of review to keep a record of its proceedings is not one of the causes mentioned in the statute.

Another reason is that, by statute (section 3922, 1 Comp. Laws [1 How. Stat. (2d Ed.) § 1870]) it is provided that no tax assessed upon any property shall be held invalid by any court on account of any irregularity in any assessment, or on account of any other irregularity, informality, or omission, or want of any matter of form or substance in any proceeding, that does not prejudice the property rights of the person whose property is taxed.

This is a curative statute, and, while it cannot cure want of jurisdiction, yet irregularities and omissions which are not jurisdictional, and do not prejudice the

property owner, will not void the tax.    In our opinion
the above statute applies to the failure of the board of
review to keep a record of its proceedings.    *Auditor
General* v. *Iron Co.*, 132 Mich. 454 (93 N. W. 1080).
In that case the single question was presented whether
failure of the board of review to keep a record of its
proceedings rendered the tax spread upon the roll in-
valid as against one who had suffered no injury by rea-
son of such omission, and it was held that it did not.
It is true that in that case the taxpayer's property was
reduced in value by the board of review, but the point
decided was that failure to keep a record would not
invalidate the tax where the taxpayer was not injured
or prejudiced by the omission to keep such a record;
and we think, under the evidence in this case, the com-
plainant was not injured or prejudiced by such
claimed omission.    Upon this branch of the case the
trial court, in its findings, said:

"The proofs show that the board of review kept a
record of its proceedings, but it is the claim of the
complainant that the record is insufficient to show what
action was taken by the board of review.    After the
board of review raised the valuation of the property
of the complainant, the complainant was notified of
its action, and complainant filed a protest with the
board of review.    The protest is set forth in paragraph
6 of the bill of complaint, and fully sets forth the ac-
tion of the board of review in so far as the proceedings
affected the property of the complainant.    The protest
clearly shows that the complainant had full and com-
plete knowledge of the action of the board of review,
and complainant cannot now complain that the record
was insufficient to give complainant the desired infor-
mation."

We agree with the conclusion reached by the trial
judge upon this branch of the case.

2. We will next consider the claim that the valua-
tions placed upon both real estate and personal prop-

189 Mich.—9.

erty by the board of review were excessive. This claim was made by the protest filed. It is worthy of sugges-tion that, upon the trial of this case, none of the offi-cers or employees of the complainant was produced and sworn as a witness. Neither did the officers present before the board of review, although requested to do so, their inventory and appraisal of the property, both real and personal, or their insurance policies.

It is urged strenuously by counsel for the complain-ant, in their brief, that the members of the board of review acted, not only carelessly but recklessly, and that such board exercised no proper judgment and fol-lowed no proper method in arriving at the valuation of complainant's property. As we have said, nowhere have they charged fraud or discrimination, or an in-tentional overvaluation by the members of the board of review.

We have examined with great care the testimony on this branch of the case, and we fail to find any evi-dence that weakens the testimony of the members of the board, who were sworn, that they exercised their best judgment as to the value of the real estate. And, as to the personal property, there had been a showing that the inventory value of complainant's personal property on January 1, 1914, was $143,000; that this personal property had been reduced $40,000 since the first of the year; leaving a balance on hand in April, 1914, of $103,000. It is true that complainant asked that this be reduced, but in our judgment it failed to produce any adequate evidence to warrant such reduc-tion, and there is nothing in the record to show that the board of review did not act in the utmost good faith in making the assessment of both real estate and personal property. The property of complainant was not the only property the valuation of which was in-creased. Its assessed value was increased 53 per cent. Nine or ten other manufacturing properties were in-

creased above the assessed valuations, ranging from 24 per cent. to 265 per cent. The statute provides that the valuation fixed by the board of review must be conclusively held by the courts and tribunals to be valid, unless it is proved that the board acted without jurisdiction, or fraudulently. Section 3899, *supra.*

This court has held that, before a court is justified in holding a tax to be illegal because the supervisor or the board of review acted fraudulently, that fact should be clearly shown by the evidence. *Williams* v. *City of Saginaw,* 51 Mich. 120 (16 N. W. 260) ; *Peninsula Iron, etc., Co.* v. *Township of Crystal Falls,* 60 Mich. 510 (27 N. W. 666) ; *Brown* v. *City of Grand Rapids,* 83 Mich. 101 (47 N. W. 117) ; *Pioneer Iron Co.* v. *City of Negaunee,* 116 Mich. 430 (74 N. W. 700) ; *Aurora Iron, etc., Co.* v. *City of Ironwood,* 119 Mich. 325 (78 N. W. 126) ; *Power* v. *City of Detroit,* 139 Mich. 30 (102 N. W. 288, 5 Am. & Eng. Ann. Cas. 645) ; *Island Mill Lumber Co.* v. *City of Alpena,* 176 Mich. 575 (142 N. W. 770).

We think the trial court was justified in its finding upon this branch of the case wherein it said:

"The bill of complaint does not allege that the board of review acted fraudulently, from improper motives, or that the valuations were purposely made too high through prejudice, or a reckless disregard of duty. The proofs show that the board of review acted fairly, honestly, and in good faith, and that their only purpose was to fully perform the trust that had been conferred upon them as public officials, that they honestly believed that the property was really worth what it was assessed by them, and that they acted in good faith, in the exercise of their best judgment, in fixing the valuations."

3. This brings us to consider the claim that the supervisors and the board of review omitted from the tax rolls more than $100,000 of assessable property in the form of household goods, furniture, etc., thereby causing complainant to bear more than its just share

and burden of taxation. In support of its claim the complainant called the four supervisors of the city. We have examined their testimony with care and are impressed with the candor of it. Complainant then called about 50 witnesses, residents of the city, and we have laboriously gone through their testimony. Counsel for appellant have, in their brief, tabulated this testimony; but we are not satisfied with the conclusion there reached. We think the conclusion is not warranted by the testimony of the witnesses. Many of them testified to insurance upon their personal property, household furniture, etc., in larger sums than the value would warrant. In many instances the witnesses testified that their household goods and effects had been in use for many years, and while the insurance was in excess of $500, the exempted amount, yet they testified that in all probability their household goods and effects would not sell for more than $500. In some instances the witnesses had been requested to make statements, and had made statements of their taxable property, omitting household furniture and effects. Two of the supervisors testified that the residents of their wards were laboring people, and they did not believe that they had household goods of a value in excess of $500. That the testimony of these witnesses does not warrant the claim put forth for it, by appellant's counsel, is evident from the cross-examination of one of them, wherein the following occurred:

"*Q.* Are the witnesses in this case, Mr. Lillie, that you have subpœnaed and produced, practically all of the residents of this city whom you think might have taxable property?

"*A.* No, not a quarter of them; and, if the balance of them would come in and swear as some of them have here, I think there would be too many donations that would be required to be taken up, to have them have something in their home to use.

"*Q.* The witnesses whom you have subpœnaed are

some of the leading citizens and leading business men
of the city?

"*A.* Yes, sir.

"*Q.* You selected them as at least fair samples, or
fair representatives, of the better or higher class of
householders in the city?

"*A.* I selected them because I believed that they
would have more than some other people here that I
knew.  Some of them, of course, I was mistaken in;
some of the wealthy class haven't got as much as some
of the poor men sworn here."

We can only consider the testimony as it stands,
whether disappointing to counsel or not.

We are not satisfied that any considerable amount
of property liable to taxation was omitted from the
rolls in the city of Grand Haven, and we say this after
carefully reading the entire testimony.  We have
looked in vain in this record for any claim made by
complainant, or its attorney, before the board, of un-
dervaluations, or any failure to place on the rolls as-
sessable property of any kind.  The protest filed in no
manner refers to the subject.

This court held, in *Fletcher Paper Co.* v. *City of Al-
pena,* 172 Mich. 35 (137 N. W. 640), that before re-
sorting to either recover taxes paid, or to avoid taxes
on the theory that the property of another had been
undervalued or omitted from the rolls, the taxpayer
must appear before the board of review and complain
that other property was assessed too low, or omitted
entirely.  We think a complete answer to complain-
ant's claim upon this branch of the case is that it has
wholly failed to prove even an inadvertent, uninten-
tional omission from the tax rolls of household goods,
furniture, etc., liable to assessment, in any appreciable
amount at least, and we are constrained to hold that
there is no evidence that any supervisor or member
of the board of review intentionally or fraudulently,
or intending or desiring to discriminate in any way,

omitted from the tax rolls any taxable property; and all of these things complainant is bound to prove before it is entitled to relief.

There is a class of cases in this State where relief has been granted. They are cases in which the taxpayer was held justly to complain; where there was a studied effort or combination on the part of the assessing officers to shift taxation from one class to another, or where the officers designedly discriminated against certain property owners in favor of others, or where large amounts and values of property were designedly left off the rolls. Some of these cases are the following: *Merrill* v. *Humphrey,* 24 Mich. 170; *Walsh* v. *King,* 74 Mich. 350 (41 N. W. 1080); *Solomon* v. *Township of Oscoda,* 77 Mich. 365 (43 N. W. 990); *Auditor General* v. *Jenkinson,* 90 Mich. 523 (51 N. W. 643); *Auditor General* v. *Prescott,* 94 Mich. 190 (53 N. W. 1058); *Auditor General* v. *Iron Co.;* 123 Mich. 521 (82 N. W. 260); *Fletcher Paper Co.* v. *City of Alpena,* 160 Mich. 462 (125 N. W. 405).

Upon the other hand, this court held, in *City of Muskegon* v. *Boyce,* 123 Mich. 535 (82 N. W. 264), that the mere fact that some of the property upon an assessment roll was undervalued, or that taxable property was omitted from the roll, was insufficient to invalidate an assessment; but to have that effect it must also be made to appear that such action on the part of the assessing officer was intentional, and that the person complaining was thereby compelled to pay more than his just proportion of taxes. Neither of these two essential elements was proved to be present in the instant case.

We think the court below reached the correct conclusion wherein it said:

"The proofs fail to show that personal property was intentionally left off from the assessment roll by the board of review. An examination of the testimony in

the case will convince any one that men differ in judgment as to the value of household goods, but the testimony fails to show that the board of review acted fraudulently or with any design or intention to omit any personal property from the assessment roll. They acted fairly, and exercised their best judgment, and attempted to fully perform their duties, and the complainant has failed to make out a case for relief."

The decree below is affirmed, with costs to the defendant.

BROOKE, C. J., and PERSON, KUHN, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.