## COPPER RANGE CO. *v.* ADAMS TOWNSHIP.

**1.** TAXATION—VALUATION OF PROPERTY—FRAUD.

Before the court is justified in holding a tax to be illegal because the assessing officers acted fraudulently, that fact should be clearly shown by the evidence; an error of judgment by the officers in their valuations of property being insufficient.

**2.** SAME—EVIDENCE—SUFFICIENCY.

In an action by a mining company against a township to recover a portion of taxes claimed to have been excessive, and paid under protest, the finding of the court below that it was unable to find in the action of any of the assessing officers, whose action is questioned, or of the board of tax commissioners, any evidence of fraud or unfairness or of any effort to shift taxation from one mining property to another, *held*, justified by the record.

Error to Houghton; O'Brien (Patrick H.), J. Submitted October 23, 1919. (Docket No. 4.) Decided December 22, 1919.

Assumpsit by the Copper Range Company against the township of Adams for taxes paid under protest. The State board of assessors, the board of State tax

commissioners, the St. Mary's Mineral Land Company, and the South Range Mining Company intervened as parties defendant. Judgment for defendant. Plaintiff brings error. Affirmed.

*Stone, Weider & Schulte,* for appellant.

*M. J. Sherwood,* for defendant township.

*Alex. J. Groesbeck,* Attorney General, and *Thomas G. Baillie,* Assistant Attorney General, for intervening defendant State boards.

*Rees, Robinson & Petermann,* for intervening defendant companies.

MOORE, J. This is a suit brought to recover a portion of taxes of 1915, paid under protest by the Baltic Mining Company. Before the trial the Copper Range Company became the owner of all of the assets of the Baltic Mining Company, and the demands in said suit were assigned to the Copper Range Company which was substituted as plaintiff. The St. Mary's Mineral Land Company and the South Range Mining Company intervened as defendants, as did the board of State tax commissioners and the State board of assessors. The case was tried before the court. From a judgment in favor of the defendant the case is brought here by writ of error.

The trial judge made findings of fact and conclusions of law. He also filed a long written opinion, which states the issues involved so clearly that we quote from it freely:

"This action was originally brought by the Baltic Mining Company to recover from the defendant, township of Adams, the sum of $27,235.91 paid under protest as taxes to the treasurer of said township on the 10th day of January, 1916. The facts out of which the controversy grows are briefly as follows:

"At the spring election of the year 1915, Frederick W. Denton was elected supervisor of Adams town-

ship. During that year, and for at least ten years before, Mr. Denton was the general manager of the group of mines controlled by the Copper Range Company. The latter company owned substantially all of the stock of the said Baltic Mining Company, of the Trimountain Mining Company, and of the Copper Range Railroad Company. It also owned one-half of the capital stock of the Champion Copper Company. Mr. Denton, who claims he had made an elaborate investigation and series of calculations of the actual cash value of the Baltic Mining Company and of other mining properties, assessed the real estate thereof consisting of its mining property situated in the township of Adams, at the sum of $2,900,000 and the real estate consisting of mining property of the Trimountain Mining Company, situated in the same township, at the sum of $550,000.    *    *    *

"When the committee on equalization met in the fall after carefully considering the matter, it recommended to the board of supervisors that the sum of $2,600,000 be added to Adams township. A motion was thereupon made to the board of supervisors to adopt this report when a protest was made by other taxpayers of Adams township to the effect that as the value of the Copper Range properties had been undervalued, it would be unfair to saddle this $2,600,000 on to Adams township as a whole and that they would suffer to the extent of about 20 per cent. in their valuations if this plan was pursued. At their request and upon the motion of Supervisor Seeber, the recommendation of the committee on equalization was laid on the table until an adjourned meeting to give such taxpayers an opportunity to present the whole matter to the board of State tax commissioners, which was the only authority that could specifically assess this amount against Copper Range properties.

"Thereupon such proceedings were had that on the 3d day of November, 1915, the State board of tax commissioners appeared in Houghton and gave a full hearing to this particular question—as stated in the language of Commissioner Kearney—'Whether these particular properties complained of in the township of Adams are on the assessment roll at their true cash value disregarding any system that the supervisor may have used in placing them there.'

"Mr. Denton presented his facts and figures at great length and defended his assessment in an able and exhaustive manner. Other parties interested were heard at length. The testimony and arguments were taken down stenographically. Mr. Denton left with the board all of his exhibits, containing carefully compiled and elaborate data tending to support his main conclusions. Mr. Rees presented an argument backed up by data tending to show that the stock market method employed by the supervisors for so many years had worked substantial justice and fairness in the valuation of mining properties. The board of State tax commissioners testify that before they decided the matter they waited for the proceedings at the hearing to be transcribed; that they gave the matter careful consideration both individually and as board, after which they unanimously decided to change the individual assessment of the Baltic Mining Company from the sum of $2,900,000 to the sum of $5,100,000, and the Trimountain Mining Company from the sum of $550,000 to the sum of $950,000, thus adding $2,-200,000 to the valuation of the Baltic Mining Company. Thereafter the board of supervisors met and equalized Adams township by adding to the total assessed valuation as fixed by the supervisor of the township the total sum of $2,600,000 being the exact amount of the increase as fixed by the State board of tax commissioners.

"A petition for a hearing was thereafter filed by Mr. Denton as supervisor for Adams township complaining of the value fixed by the board of equalization as to Adams township, as to Calumet township and as to Osceola township, setting forth and condemning the method pursued by the committee on equalization in adopting stock market quotations as a basis of valuation. This petition was denied. So the taxes of the Baltic Mining Company claimed to be excessive were paid under protest and this action is brought to recover the same.

"Two propositions of fact are advanced by the plaintiff as a basis for a recovery in this case.

"(1) That the property of the Baltic Mining Company was grossly, arbitrarily, unlawfully and fraudulently placed upon the assessment roll by the State

board of tax commissioners at a sum largely in excess of its cash value.

"(2) That the property of the Calumet & Hecla Mining Company and of the Osceola Consolidated Mining Company was fraudulently placed upon the rolls of the townships of Calumet and Osceola, respectively, at sums away below the true cash values of said properties.

"I am unable to find any evidence in the record that the State board of tax commissioners acted hastily, carelessly or fraudulently in the matter of assessing the property of the Baltic Mining Company. There is no evidence that they did not use their best judgment. They gave due weight to the elaborate data and argument presented by Mr. Denton. Even if they found after carefully considering both methods of arriving at the true cash value of the Baltic Mining Company that the conclusions reached by considering the stock market quotations of the shares of the Copper Range Company as an element in the result is correct, Can a court say that they acted in bad faith? Can a court say that they did not exercise their best judgment? Did the tax commission adopt a fundamentally wrong principle? * * *

"But the committee on equalization did not blindly follow the stock market. They made what they considered reasonable deductions. They classified the mines. On the whole, if the matter was before me for decision as an assessing officer, I should consider that the stock market method of arriving at the true cash value of mining properties will in the long run prove more certain, just and equitable than any method based upon calculations founded upon data, a great deal of which is merely assumed to exist. If we were going to prove the true cash value of a piece of real estate we would inquire what similar real estate in the neighborhood was actually selling for or had sold for in the open market. * * *

"But it is said by the learned counsel for plaintiff that there was no way of applying the stock-market method of valuation to the Baltic property for the reason that its shares are not quoted on the exchange. The answer to this proposition is that if the stock-market method was not applied, then counsel has noth-

ing to complain of because the whole foundation of plaintiff's claim is that the true cash value cannot be determined by resorting to stock-market quotations. In fact in this particular instance not only was market quotations of the Copper Range Company considered, but also data derived from other sources. The process was about this: The market value of the entire Copper Range Company was ascertained by multiplying the total number of its shares by 52, the quotation on the 12th day of April, 1915. True cash value of the property was determined by figuring 72½ per cent. of this amount. From this sum was deducted the valuation of one-half Champion as assessed by Mr. Denton and also the valuation of the Copper Range Railroad, a subsidiary of the Copper Range Company, as assessed by the State board of assessors. The assessed value of certain real estate owned by the Copper Range Company was deducted and the balance was the proposed assessment of the Trimountain and Baltic companies to bring the total Copper Range proportion on a par with other mining properties. The total additional valuation was added to Trimountain and Baltic substantially in the proportions of their respective assessed valuations.

"So we see that the board of State tax commissioners made calculations based on ascertained data. They acted on evidence after a full hearing. They reached a unanimous conclusion as to the true cash value of the plaintiff's real estate. In my judgment, after carefully reading and studying all of the evidence presented to the commissioners, I not only cannot say that they recklessly or fraudulently placed an excessive valuation upon the mining property of the plaintiff, but, on other hand, it is my belief that they exercised sound judgment in reaching the result of which the plaintiff complains. It goes therefore, without saying, that far from showing any fraud or discrimination, the evidence shows that the commissioners acted honestly, independently and in the utmost good faith. Nor am I able to find that the State tax commissioners, in assessing the Baltic Mining Company, adopted a fundamentally wrong principle. On the contrary, the principle or system adopted was more likely to bring a fair and reasonable result than

any other system or principle brought to their attention.

"Complaint is also made by the plaintiff of a gross undervaluation of the Calumet & Hecla and of the Osceola mines by the supervisors of Calumet and Osceola townships in the spring of 1915. In determining the true cash value of the Osceola Consolidated Mining Company the stock market value of its shares was used as an element in the calculation precisely as was done in assessing other mining properties. In assessing the Calumet & Hecla property the stock market value of the Calumet & Hecla Mining Company was considered as a basis of the calculation of the true cash value of its real estate in the same way. To ascertain the value of its real estate in Calumet township there was deducted from the stock market value of the company its holdings of stock in other Michigan mining companies whose property was assessed elsewhere; the value of its real estate in other townships and its personal property holdings. After making those deductions, all of which were proper in order to avoid double taxation, the supervisor assessed 72½ per cent. of the balance against the Calumet & Hecla. While Mr. James MacNaughton, the supervisor, was also the general manager of the Calumet & Hecla Mining Company, he did not attempt to devise any different system for determining the value of the mining properties in which he was interested than the one which had been in vogue when he first became supervisor. So it follows that the Calumet & Hecla property was assessed at a reasonable percentage of the value that was placed upon the property by those who in the open market were buying undivided interests in it represented by shares of its common stock. * * *

"So when we consider how honest and fair-minded men may differ about the factors that should be considered in placing a valuation on a mining property, Can we say that a supervisor who takes for a substantial element in his data the evidence of actual sales of its stock in the open market is acting arbitrarily and unjust? Isn't it more disinterested than it would have been had he worked out his own method of valuation? If every one of the supervisors in Houghton county should adopt his own method of determining

the mining property for assessing purposes, there would be no uniformity in results. We would have a sort of Dutch auction, in which every supervisor interested as manager of a mining company would be obliged to reduce the assessment on his mines so as not to be outdone by the other fellow. And if the necessity should exist I don't think that our mine managers would have any difficulty in supplying a line of figures that would wring tears from the eyes of a mummy.

"So I conclude, as a matter of fact, there is no evidence of undervaluation of either the Calumet & Hecla or of the Osceola properties.

"But even if there has been an error of judgment either by the tax commission in its assessment of the Baltic Mining Company's property or by the supervisors of Calumet and Osceola townships in their valuations of the Calumet & Hecla and Osceola properties, this fact of itself would afford no basis for recovery in this action. There must be some evidence of an intentional violation of duty on the part of the assessing officers, or such reckless disregard of a taxpayer's manifest rights as would reasonably lead to an inference of intentional inequality or of a clear adoption of a fundamentally wrong principle before an assessment can be declared void.

"In the briefs of counsel I find no dispute about the legal principle governing in actions of this kind. In this State it has been frequently held that before a court is justified in holding a tax to be illegal because the supervisor or the board of review acted fraudulently, that fact should be clearly shown by the evidence. *Story & Clark Piano Co.* v. *Hilderink,* 189 Mich. 131, citing a great number of cases, including *Pioneer Iron Co.* v. *City of Negaunee,* 116 Mich. 430; *Aurora Iron Mining Co.* v. *City of Ironwood,* 119 Mich. 325; *Island Mill Lumber Co.* v. *City of Alpena,* 176 Mich. 575.

"The Supreme Court of this State has held in *City of Muskegon* v. *Boyce,* 123 Mich. 539, that the mere fact that some of the property upon the assessment roll was undervalued or that taxable property was omitted from the roll, was insufficient to invalidate the assessment; but to have that effect it must also

be made to appear that action on the part of the assessing officers was intentional and that the person complaining was thereby compelled to pay more than his just portion of taxes. *Story & Clark Piano Co.* v. *Hilderink*, 189 Mich. 134.

"There are cases in this State where relief has been granted, but they are cases in which the taxpayer was held justly to complain and where there was a studied effort or combination on the part of the assessing officer to shift taxation from one class to another and where the officers designedly discriminated against certain property owners in favor of others, or where large amounts and values of property were designedly left off the roll. Some of these cases are the following: *Merrill* v. *Humphrey*, 24 Mich. 170; *Walsh* v. *King*, 74 Mich. 350; *Solomon* v. *Township of Oscoda*, 77 Mich. 365; *Auditor General* v. *Jenkinson*. 90 Mich. 523; *Auditor General* v. *Prescott*, 94 Mich. 190; *Auditor General* v. *Pioneer Iron Co.*, 123 Mich. 521; *Fletcher Paper Co.* v. *City of Alpena*, 160 Mich. 462.

"The foregoing rules governing the legality or illegality of assessing officers in general are also applied by courts in considering the action of the State board of tax commissioners. In a suit to declare void assessments, the court will not consider complaints as to the results reached by the State board of assessors except those based on fraud or an adoption of a fundamentally wrong principle. *Chicago, etc., R. Co.* v. *Babcock*, 204 U. S. 585 (27 Sup. Ct. Rep. 326), citing as the foundation of this principle the opinion of our Supreme Court in *Newport Mining Co.* v. *City of Ironwood*, 185 Mich. 685.

"In *Chicago, etc., R. Co.* v. *Babcock, supra,* the court says:

" 'Within its jurisdiction, except as we have said, in the case of fraud or clearly shown adoption of wrong principles, it [that is the State board] is the ultimate guardian of certain rights.'

"If the State board of tax commissioners acted fairly, honestly and justly towards the plaintiff in arriving at their conclusion, there is nothing to justify the court in setting aside the action of the board. *Newport Mining Co.* v. *City of Ironwood*, 185 Mich. 692; *Sunday Lake Iron Co.* v. *Township of Wake-*

*field,* 186 Mich. 631. The ascertainment of the value of taxable property is judicial and requires the judgment of the assessor upon his official oath. *Wall* v. *Trumbull,* 16 Mich. 228; *Woodman* v. *Auditor General,* 52 Mich. 28. The same may be said of the action of the board of review. * * * If they act in good faith and exercise their best judgment, mere errors in judgments will not defeat their action. * * * The burden of proof is on the complainants to sustain the charges of unfairness and fraud by a fair preponderance. *Pioneer Iron Co.* v. *City of Negaunee,* 116 Mich. 435.

"Viewing the case as a whole and having regard to the foregoing principles, I am unable to find in the action of any of the assessing officers whose action is questioned herein or of the board of tax commissioners any evidence of fraud or unfairness or of any effort to shift taxation from one mining property to another. * * *

"Judgment for the defendant township will be entered, with costs to be taxed."

We have, with the appendix containing many exhibits, a long record. We have carefully prepared briefs by able counsel. We have gone over these with care. We think it would profit no one to go into details of the record. The questions involved are not new in this State. We agree with the trial judge in his statement:

"I am unable to find the action of any of the assessing officers whose action is questioned herein, or of the board of tax commissioners any evidence of fraud or unfairness, or of any effort to shift taxation from one mining property to another."

The authorities cited by the learned judge are controlling of the law of the case.

The judgment is affirmed with costs to the defendant.

BIRD, C. J., and SHARPE, STEERE, BROOKE, and KUHN, JJ., concurred. FELLOWS and STONE, JJ., did not sit.